# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01670-SCT

*CITY OF CLINTON, MISSISSIPPI*

*v.*

*ERNEST SMITH*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/12/2002 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH R. DREHER |
| ATTORNEY FOR APPELLEE: | JOEL W. HOWELL, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### EASLEY, JUSTICE, FOR THE COURT:

¶1.     On February 5, 1996, Ernest Smith (Smith) fell while exiting the municipal court building in Clinton, Mississippi. Smith left the building by way of the handicap ramp. Due to the ice and snow on the ramp, Smith slipped and fell. Smith received medical treatment for his injuries from the fall.

¶2.     Smith filed suit against the City of Clinton in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on May 5, 1997. On January 31, 1997, written notice was given to Rosemary Aultman, as Mayor of Clinton, Mississippi, prior to filing suit regarding Smith's February 5, 1996, accident and the injuries which resulted. Circuit Judge Winston L. Kidd conducted a bench trial pursuant to Miss. Code Ann. § 11-46-13(1) (Rev. 2002). The trial court rendered a final judgment in the amount of $150,000 for Smith. From this decision, the City filed its appeal to this Court.

## FACTS

¶3.    On February 5, 1996, Smith went to the municipal court building in Clinton, Mississippi to pay a fine for a DUI offense. The City concedes that the City of Clinton had been struck by a severe ice storm. Smith entered the building by the steps into the building. He observed ice and snow on the steps. Smith observed no warning or flags regarding the ice and snow accumulation. When Smith exited the building, he left by way of the wheelchair ramp. The City concedes that Smith slipped and fell exiting the building sustaining some injury.

¶4.    Paramedics took Smith to the Mississippi Methodist Hospital where he was treated and released on medication. A week or two later, Smith went to see Dr. Bill Spell at the University Hospital. Dr. Spell took x-rays. Smith was referred to Dr. Robert Smith (Dr. Smith), a neurosurgeon, for treatment by another doctor also named Dr. Robert Smith.

¶5.    Dr. Smith initially saw Smith on April 25, 1996. Dr. Smith saw Smith again on June 20, 1996, for his complaints of arm tingling, uncomfortable feeling in his right hand, trouble using his hands, weakness of his right wrist and absence of triceps and brachioradialis reflex on the right. Dr. Smith ordered further x-rays. The scan revealed a tight canal. The intervertebral foramen at C6-7 was severely comprised bilaterally. Dr. Smith stated that Smith must have contused a nerve root during his fall.

¶6.    Dr. Smith saw Smith again in September of 1996. A review of the MRI indicated a herniated disk at C7 and T1. Dr. Smith stated that based on Smith's medical history he "would have to assume there's a causation" between the fall and the herniated disk.

¶7.    During a visit in May of 1999, Dr. Smith referred Smith for a nerve conduction test. Reviewing the results of the nerve conduction test, Dr. Smith discovered C8 radiculopathy. To a reasonable degree

2

of medical certainty, Dr. Smith attributed the injury to the fall. Dr. Smith last saw Smith on February 6, 2001.

¶8.	Dr. Smith determined that Smith had some permanent injuries proximately caused by the fall. Dr. Smith testified that Smith would probably require future medical care amounting to several thousand dollars a year. Dr. Smith felt that Smith would require treatment for four or five years after the injury. Since the accident occurred in 1996, Dr. Smith felt that by the time this deposition was taken on September 11, 2001, Smith should be getting to the stage where he would not need much future medical treatment. However, Dr. Smith stated that Smith will have some continued permanent pain. Dr. Smith's medical charges amounted to $553.50.

¶9.	Smith was also treated by Dr. Leonard Edwards, a chiropractor. Dr. Edwards initially saw Smith on March 19, 1997, for arm, neck and head pain related to a fall on February 5, 1996. Based on his examination, Dr. Edwards determined that Smith exhibited weakness and a loss of agility in his right hand. Dr. Edwards stated that within a reasonable degree of medical certainty, the fall caused the difficulty Smith was experiencing. The course of treatment that Dr. Edwards provided consisted of "working with the cervical spine as well as the extremity to increase the range of motion to the extremity to increase usage of the hand." Dr. Edwards also used cryotherapy on Smith. After Smith's adjustment, Dr. Edwards placed Smith in cervical traction with ice applied to the neck to increase the natural lordosis or curvature of the neck and also to the extremity. Smith was told to continue ice therapy at home on a daily basis. Dr. Edwards continued treatment until the visit on May 5, 2000.

¶10.	Dr. Edwards determined that within a reasonable degree of medical probability that Smith would have permanent limitations as to any twisting motion of his hand as a result of the fall. Dr. Edwards's

3

charges for chiropractic care amounted to $14,291.00. Dr. Edwards stated that none of his charges had been paid.

¶11.    Dr. Edwards stated that within a reasonable degree of probability, Smith would need future chiropractic care. Dr. Edwards testified the cost of chiropractic treatment would be $6,240.00 a year.

¶12.    Smith introduced Medicaid's statement of payments made in connection with medical services provided and pharmacy payments made as a result of the accident dated February 5, 1996. The statement indicated payment of $8,077.26 by Medicaid.

¶13.    After a bench trial on December 18, 2001, briefs were submitted, and Judge Kidd rendered his opinion in favor of Smith, awarding damages of $150,000. Judgment was entered from that sum. From that judgment, the City appealed to this Court, raising the following issues:

> **I.     Whether the City is entitled to absolute immunity under Miss. Code Ann. § 11-46-9(1)(v).**
>
> **II.    Whether the trial court failed to apply the doctrine of comparative negligence.**

## DISCUSSION

¶14.    On appeal, the City contends that it is entitled to immunity from liability to Smith pursuant to Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002). However, Miss. Code Ann. § 11-46-9(1)(v) provides that governmental entity shall not be liable for any claim:

> Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee if the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that **a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care**[.]

(emphasis added).

4

¶15. In awarding damages of $150,000 against the City, the trial court stated:

> The City of Clinton claims absolute immunity from suit in this case based upon Mississippi Torts Claim Act exemption found in § 11-46-9 (1)(v) which states in pertinent part:
>
> > (1) A governmental entity and its employees action within the course and scope of their employment or duties shall not be liable for any claim:
> >
> > ...
> >
> > > (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care.
>
> Miss. Code Ann. § 11-46-9 (1)(v).
>
> Applying the foregoing to the facts in this case, the court finds that the City of Clinton is responsible for Ernest Smith's injury. The evidence is clear that officials of the City of Clinton had either actual or constructive knowledge of the dangerous condition surrounding the entrance to the municipal building. It is equally clear that no precautionary measures were taken until after Mr. Smith fell and sustained his injury. Consequently, the shield of absolute immunity is not available to the City of Clinton and it is liable to Smith for damages for the injuries he sustained in the February 5, 1996, fall in front of the City of Clinton Municipal Building.

¶16. This Court's standard of review of a judgment from a bench trial is well settled. "'A circuit judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor,' and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence." *Maldonado v. Kelly*, 768 So.2d 906, 908 (Miss. 2000) (quoting *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000) (citing *Puckett v. Stuckey*, 633 So.2d 978, 982 (Miss. 1993); *Sweet*

*Home Water & Sewer Ass'n v. Lexington Estates, Ltd.*, 613 So.2d 864, 872 (Miss. 1993);

*Allied Steel Corp. v. Cooper*, 607 So.2d 113, 119 (Miss. 1992)).

¶17.     Based on Smith's testimony during cross-examination, the trial court erred in its analysis by ignoring the **entire** language of Miss. Code Ann. § 11-46-9(1)(v), that "a governmental entity shall not be liable for failure to warn of a dangerous condition which is obvious to one exercising due care."  At trial and in his deposition, Smith admitted that the steps and ramp were covered with enough snow and ice for any human eye to see and that he wasn't paying attention as he left the building holding his money and a receipt.

¶18.     As an example of the application of Miss. Code Ann. § 11-46-9(1)(v), the Mississippi Court of Appeals recently addressed this issue in *City of Newton v. Lofton*, 840 So.2d 833, 836 (Miss. Ct. App. 2003).  The City of Newton contended that "the trial court misapplied the law to the facts of this case erroneously determining that the City of Newton was not immune from liability under Miss. Code Ann. § 11-46-9 (1)(v)."  840 So.2d at 835.  In an effort to attend a junior-senior prom held in the Newton Middle School gymnasium, Lofton had parked her vehicle in a parking lot to the rear of the gymnasium and walk a path across a grassy area and through a construction site.  *Id*. at 834-35.  The City was doing construction in order to improve drivers' visibility in the area.  *Id*. at 835.  Witnesses testified that there was an absence of warning signs and that construction was not completed.  *Id*.  "Lofton sustained a compound fracture to her leg and incurred medical expenses totaling $18,135.00."  *Id*.  Lofton "endured three hospital stays and years of rehabilitation to retain use of her leg."  *Id*.  The trial court conducting a bench trial awarded Lofton $155,054.25.  *Id*.  In upholding the trial court's award, the court held that:

> The trial court used the statute to determine, based on the facts of the case, if the statute provided immunity for the City of Newton.  After weighing all the evidence, the trial court determined that Lofton's injury was caused by the negligence of the City of Newton, by failing to warn and protect Lofton, who was an invitee, against the dangers present on said

construction site. The trial court, sitting as the jury, determined that the condition was not open and obvious which is required for immunity to apply. The City of Newton failed to have present warning devices surrounding said construction site, which, if present, could have alerted Lofton to the danger.

*Id*. at 836.

¶19. Unlike the facts in *Lofton*, Smith by his own testimony, during his deposition and during cross-examination, admitted that the ice and snow on the ramp was obvious for anyone to see. Based on Smith's admission, the facts present a situation of an open and obvious condition which is required for immunity pursuant to Miss. Code Ann. § 11-46-9(1)(v). Therefore, we find that the trial court erred in not granting the City immunity pursuant to Miss. Code Ann. § 11-46-9(1)(v). As this issue is dispositive of the case, we will not address comparative negligence raised on appeal by the City in its second issue.

## CONCLUSION

¶20. For the foregoing reasons, we find that the trial court erred in not finding the City immune under Miss. Code Ann. § 11-46-9(1)(v). Therefore, we reverse the judgment of the Circuit Court of Hinds County awarding Smith $150,000, and we render judgment here in favor of the City finally dismissing Ernest Smith's complaint and this action with prejudice.

¶21. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶22. The majority erroneously finds that the circuit court erred in rendering judgment in favor of Ernest Smith for personal injuries he received as a result of a fall he sustained on the handicap ramp of the City of Clinton municipal court building. The majority fails to give deference to the circuit court judge who

7

presided in a bench trial and both viewed the evidence and the witness testimony. After reviewing the evidence and applying Miss. Code Ann. § 11-46-9(1)(v) (Rev. 2002), the circuit court judge correctly found the City of Clinton liable for Smith's injuries. His findings were based on substantial credible evidence and should not be overturned. The circuit court correctly found and the evidence clearly established that Smith exercised ordinary care in descending the handicap ramp, the City of Clinton had either actual or constructive knowledge of the hazards created by the ice on the handicap ramp, the City of Clinton took absolutely no precautionary measures to ensure the safety of individuals entering and exiting the building, and the conditions created by the ice were not obvious. For these reasons, I dissent.

¶23.    Actions brought under the Mississippi Tort Claims Act ("MTCA") are conducted by bench trial where the trial judge sits as trier of fact. Miss. Code Ann. § 11-46-13(1) (Rev. 2002); *Simpson v. City of Pickens*, 761 So.2d 855, 860 (Miss. 2000); *City of Newton v. Lofton*, 840 So.2d 833, 835 (Miss. Ct. App. 2003). The trial court's findings will not be disturbed unless the judge "abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Id.* at 836. Furthermore, the trial judge's findings of fact are safe on appeal if "supported by substantial, credible, and reasonable evidence." *City of Jackson v. Perry*, 764 So.2d 373, 376 (Miss. 2000). However, errors of law are reviewed de novo. *Id.*

¶24.    With the above standards in mind, the applicable statute at issue is Section 11-46-9(1)(v) of the MTCA, Miss. Code Ann. § 11-46-9(1)(v), which specifically provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>> Arising out of an injury caused by a dangerous on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for

> failure to warn of a dangerous condition which is obvious to one exercising due care.

Miss. Code Ann. § 11-46-9(1)(v).[1]  Under this section, the governmental entity and its employees may not be liable for premises conditions under any of the following:

1.  A dangerous condition on the property of the governmental entity which ***was not caused by the negligence or other wrongful conduct of an employee of the governmental entity;***
2.  A dangerous condition on the property of the governmental entity for which ***the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against***; and/or
3.  An ***open and obvious condition which is obvious to one exercising ordinary care*** despite the governmental entity's failure to warn.

The specific requirements for each are separate and distinct as each of the three have been laid out by statute.  Each of the three will be addressed individually below, and the requirements for each will be discussed.

> **1.**      ***A dangerous condition on the property of the governmental entity which was not caused by the negligence or other wrongful conduct of an employee of the governmental entity.***

¶25.    Obviously, under this condition for absolute immunity, the City of Clinton is not liable to Smith.  The dangerous condition, that being the ice on the handicap ramp, was not caused at all by the governmental entity or any of its employees.  The  ice as a dangerous condition was caused by an act of God, the weather.

> **2.**      ***A dangerous condition on the property of the governmental entity for which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against.***

---

[1]   Despite this Court's abandonment of the "open and obvious" defense as a total bar to the maintaining of a tort claim in ***Tharp v. Bunge Corp.***, 641 So.2d 20 (Miss. 1994), the Legislature has chosen to adopt that standard to be applied to the State, its governmental entities, and employees.

¶26.     This condition for absolute immunity requires further inquiry than the one discussed above.  The condition turns upon whether the City of Clinton had (1) actual or constructive knowledge (also referred to as "notice"); and (2) whether it took proper precautions to warn if it had such notice.

¶27.     Actual knowledge requires a finding that the City of Clinton through its employees knew of the dangerous condition, that being the ice on the handicap ramp.  ***Munford, Inc. v. Fleming***, 597 So.2d 1282, 1284 (Miss. 1992).  Constructive knowledge is established "by proof that the condition existed for such a length of time that, in the exercise of reasonable care, the proprietor should have known of it." ***Id.*** (quoting ***Waller v. Dixieland Food Stores, Inc.***, 492 So.2d 283, 385 (Miss. 1986)).  A proprietor or governmental entity is said to have constructive knowledge when in the exercise of ordinary care it "should have known of the condition." ***Id.***  *See also* ***Lindsey v. Sears Roebuck & Co.***, 16 F.3d 616, 618 (5th Cir. 1994); ***Anderson v. B.H. Acquisition, Inc.***, 771 So.2d 914, 918 (Miss. 2000).

¶28.     Based on the evidence presented, the circuit court found that the City of Clinton had actual and/or constructive knowledge of the ice on the handicap ramp and that no precautions were taken to warn its citizens using the building.  Even based on the majority's facts, the circuit court's findings are justified.  The City of Clinton had been struck by a severe ice storm.  There is no possible way the City and its employees could argue that they were unaware that ice was on the ground, sidewalks, steps, and handicap ramps located outside the municipal court building.  The City maintained no warnings or flags regarding the ice present outside of the buildings entrance.  Since the circuit court judge presiding in a bench trial was the trier of fact, his findings are to be given great deference. ***Miss. Dep't of Transp. v. Cargile***, 847 So.2d 258, 263 (Miss. 2003) (collecting authorities).  This deference recognizes that conflicting evidence and testimony, even as to actual or constructive knowledge, must also be upheld unless "substantial credible evidence" does not support his findings. ***Id.***  We must review the "entire record and must accept that

'evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact.' " *Id.* (quoting *K-Mart Corp. v. Hardy ex rel. Hardy*, 735 So.2d 975, 980 (Miss. 1999) (citations omitted)). As the evidence clearly supports the circuit court judge's findings, this Court should not second guess his good judgment, especially in light of the fact that he viewed the evidence and heard the testimony of the witnesses.

> **3**.  *An open and obvious condition which is obvious to one exercising ordinary care despite the governmental entity's failure to warn.*

¶29.   The last condition for absolute immunity requires an "obvious condition" to one "exercising ordinary care." Under this condition, the City of Clinton is not required to warn its residents of the dangerous condition.

¶30.   Whether a condition is "obvious" is a question of fact. *Huffman v. Walker Jones Equip. Co.*, 658 So.2d 871, 873 (Miss. 1995); *City of Newton*, 840 So.2d at 836. A determination of just how "obvious" a condition is turns upon the fact finder's analysis of the evidence presented. *Tate v. Southern Jitney Jungle Co.*, 650 So.2d 1347, 1350 (Miss. 1995) (collecting authorities).

¶31.   Under the circumstances, the circuit court, as the fact finder, determined that based on the evidence presented the dangerous condition was not "obvious" and that Smith used "ordinary care." His findings are supported by "substantial credible evidence" and should not be disturbed. *City of Newton*, 840 So.2d at 836. Despite the majority's attempt to misconstrue Smith's testimony, his testimony does not reveal that he was on "notice" of the dangerous condition on the handicap ramp or that such condition was "obvious." The segment of his testimony cited by the majority only proves that Smith was aware of ice on the **steps** of the municipal court building and not on the **handicap ramp** of the municipal court building.

11

In fact, Smith's testimony reveals that he was using "ordinary care" by choosing to descend by way of the handicap ramp instead of the steps after having noticed the ice on the steps on his way into the building.

¶32.    The trial court heard the testimony of the witnesses and evaluated Smith's claim on a first-hand basis.  His findings should be given respect and deference.  Accordingly, I would affirm the circuit court's judgment.  For the above-stated reasons, I dissent.