CARLTON, J.,
for the Court:
MODIFIED OPINION ON MOTION FOR REHEARING
¶ 1. The motion for rehearing is denied. We withdraw our original opinion and substitute this modified opinion.
¶ 2. On July 14, 2009, Willie Kinzie was employed by Triangle Trucking, and he suffered injuries while unloading cargo from a trailer. Kinzie filed suit against Belk Department Stores, and Staffmark Investment LLC[1] (collectively Appellees) in the Hinds County Circuit Court, alleging negligent loading and securing of cargo. The trial court granted the Appellees’ motion to dismiss based upon Kinzie’s alleged discovery misrepresentations and entered an order dismissing the case with prejudice. Kinzie now appeals the trial court’s order of dismissal. Finding error, we reverse the order of dismissal, and remand this case for further proceedings.
FACTS
¶ 3. Kinzie, a truck driver for twenty-eight years, was employed by Triangle Trucking at the time of the injuries at issue. Triangle Trucking had dispatched Kinzie as a truck driver for Belk since 2007. At the time of his injury, Kinzie’s job required him to pick up a loaded trailer of Belk cargo from the Belk distribution center in Byram, Mississippi, and unload it at other Belk locations throughout the United States.
¶ 4. On July 14, 2009, Kinzie picked up a loaded trailer at the Belk distribution center in Byram and traveled to a Belk facility in Cullman, Alabama. In the course of unloading his truck, which contained approximately 2,161 cases of cargo, weighing a total of 18,229 pounds, Kinzie injured his back. Shortly after he received his injury, an ambulance transported Kinzie to the emergency room, where physicians diagnosed him with a central-disc protrusion, disc desiccation, and disc bulging.
¶ 5. Kinzie initially engaged in a nonsurgical, conservative treatment. Then, on January 4, 2010, Kinzie underwent a bilateral L4-5 hemilaminectomy and discec-tomy surgery. On May 25, 2010, Kinzie was placed at a maximum medical improvement with a ten percent impairment rating. Kinzie’s treating physician, Dr. Howard Holaday, explained that Kinzie possessed the capability to perform sedentary to light duty work, with a lifting restriction of no greater than twenty pounds, and restrictions on frequent stooping and bending. Although Kinzie claimed to need a cane for stability and assistance, Dr. Holaday provided no recommendation for Kinzie to use a cane. Kinzie asserted that Dr. Holaday also warned him to wean *1022 himself off of the cane. The results of functional capacity evaluations (FCEs) performed on April 20, 2010, and May 13, 2010, showed that Kinzie could perform work on a sedentary-physical-demand level only. The FCEs also showed Kinzie possessed a dysfunctional sacroiliac (SI) joint.
¶ 6. On October 21, 2010, Kinzie filed suit against the Appellees, alleging that his back injury resulted from the Appellees’ negligent loading of light cargo items on the bottom of the trailer and heavy cargo items on the top, as well as failure to secure the cargo. Kinzie submits that a medical estimate projects his future medical expenses will total $117,406.90. He also submits that his past medical expenses, lost wages, future medical expenses, and future lost wages amount to $664,890.37. During discovery, Kinzie, through counsel, provided responses to interrogatories and also provided deposition testimony, all of which responded to questions relating to his injury and explaining his present physical limitations resulting from his injury.
¶ 7. Interrogatory 5 inquired about any opinions rendered by a doctor or medical provider regarding Kinzie’s injuries. Kin-zie objected to interrogatory 5 as being outside the permissible scope of discovery, but answered by explaining that he had been “assigned permanent work restrictions of no lifting greater than twenty pounds,” was prohibited from “frequent stooping or bending,” and “had been told that [he] can only perform work in the sedentary physical demand level at eight hours a day, five days a week.” Kinzie further stated in his response that he had “been told that [he has] a ten percent whole person permanent impairment rating.” Interrogatory 11 stated: “Describe all activities you were able to perform or participate in prior to July 14, 2009, that-you cannot perform or participate in now.” Kinzie answered the interrogatory by stating:
As a result of the injuries sustained in this accident, I have the following limitations: not able to cut grass or take care of lawn, unable to perform house cleaning, not able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities as before incident.
¶ 8. Unbeknownst to Kinzie or his counsel, the Appellees hired an investigator to perform surveillance of Kinzie during the period of August 19, 2011, to September 22, 2011 (thirty-four days). Of the thirty-four-day period of surveillance, twenty-five minutes of excerpts of video footage were provided. The excerpts provided were edited and are not a complete video of the entire thirty-four-day time period. As acknowledged, excerpts of the footage provided show snapshots in time during the thirty-four-day surveillance period. The investigator prepared a report of Kinzie’s activities during the period. The excerpts of the video footage reveal Kinzie driving and walking to the post office and his attorney’s office, and working with another man on his shed in the backyard of his house. In response to the video evidence, Kinzie claims that he never violated his physician’s restrictions, nor did he perform any task that he stated in his discovery responses that he could not perform, even while working on his shed.
¶ 9. The Appellees filed a motion to dismiss, arguing that based on the surveillance video, Kinzie misrepresented the extent of his injuries during discovery. The trial court found that the elements set forth in Pierce v. Heritage Properties Inc., 688 So.2d 1385 (Miss.1997), were satisfied such that Kinzie’s alleged discovery viola *1023 tions warranted dismissal of the case with prejudice. The trial court entered an order dismissing Kinzie’s case with prejudice.
¶ 10. Kinzie now appeals, arguing that:
(1) the trial court erred in holding that he made false representations in his interrogatory responses and deposition testimony;
(2) the trial court erred in finding that no lesser sanction was appropriate and applying the sanction of dismissal with prejudice; and (3) the trial court erred in denying Kinzie an evidentiary hearing.
STANDARD OF REVIEW
¶ 11. Mississippi Rule of Civil Procedure 37(b)(2)(C) provides that a trial judge may, in appropriate cases, impose the sanction of “dismissing the action or proceeding or any part thereof.” On appeal, we review such dismissals under an abuse-of-discretion standard. Wood ex rel. Wood v. Biloxi Pub. Sch. Dist., 757 So.2d 190, 192 (¶ 18) (Miss.2000). When reviewing a decision that is within the trial court’s discretion, we first ask if the trial court applied the correct legal standard. Id. “If the trial court applied the correct legal standard, then [the appellate court] will affirm a trial court’s decision unless there is a ‘definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.’ ” Id. (quoting Scoggins v. Ellzey Beverages Inc., 743 So.2d 990, 996 (¶ 27) (Miss.1999)); Pierce, 688 So.2d at 1388.
DISCUSSION
¶ 12. Kinzie argues that the trial court erred in holding that Kinzie’s alleged discovery violations warranted dismissal of the case with prejudice pursuant to Pierce. Kinzie asserts that no misrepresentation occurred during discovery. He explains that he listed his present limitations in his discovery responses, and that he made it very clear that his pain “was not there every day,” that some days his pain “is worse than others,” and that “it comes and goes.”
¶ 13. The Appellees concede that the surveillance video fails to show Kinzie violating any of his medical restrictions, but instead argue that the video shows Kinzie misrepresented the extent of his injuries and pain caused by these injuries. Kinzie refutes this argument, explaining that the video surveillance is consistent with his discovery responses. Kinzie states that he never violated his physician’s restrictions, nor did the video reveal Kinzie performing any task that he said he could not perform in his discovery responses.
¶ 14. The record shows that the trial court, despite Kinzie’s objection, adopted the proposed order drafted by the Appellees containing findings of facts and conclusions of law. The supreme court has established that “[a] circuit judge sitting without a jury is accorded the same deference with regard to his findings as a chancellor, and his findings are safe on appeal where they are supported by substantial, credible, and reasonable evidence.” City of Clinton v. Smith, 861 So.2d 323, 326 (¶ 116) (Miss.2003) (citation and internal quotation marks omitted)
¶ 15. The trial court’s order of dismissal specifically took issue with Kinzie’s response to interrogatory 11, which stated: “Describe all activities you were able to perform or participate in prior to July 14, 2009, that you cannot perform or participate in now.” Kinzie answered the interrogatory by stating:
As a result of the injuries sustained in this accident, I have the following limitations: not able to cut grass or take care of lawn, unable to perform house cleaning, not able to drive but for very short *1024 periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities as before incident.
The order of dismissal reflects that during Kinzie’s September 12, 2011 deposition, the Appellees inquired as to Kinzie’s physical limitations and his response to interrogatory 11. The order states that Kinzie
proceeded to testify under oath that he always has his cane with him when he is ■ outside his house; that he has to use his cane or pieces of furniture while walking inside his house; that he cannot climb up and down to drive a truck; and that he cannot handle a lawn mower or anything else with a handle.
¶ 16. The trial court listed out the Pierce elements for determining whether the dismissal of a party’s cause of action for discovery violations is an appropriate sanction.[2] The trial court stated that it applied the Pierce elements to the present facts and determined that Kinzie’s “discovery violations ... require the dismissal of his action with prejudice.” The trial court explained:
[Kinzie] intentionally misrepresented his limitations and impairments to the [Ap-pellees] while responding to interrogatory 11 on September 6, 2011. In that response, he states that he “cannot lift or carry objects or even groceries,” but surveillance video taken of [Kinzie] two weeks earlier shows [him] lifting and carrying objects, including ladders and lumber, while building a shed. [Kinzie] then falsely testified in his deposition that he carries a cane with him whenever he walks outside, that he cannot walk inside his house without a cane or the aid of a piece of furniture, that he cannot operate anything that has a handle, and that he cannot climb up and down. Again, surveillance video taken of [Kin-zie] during the month before his deposition clearly shows that he can walk freely without his cane,. use several tools with handles, and climb up and down a ten-foot ladder. Second, this court concludes that these same false representations made by [Kinzie] establish that any sanction other than the dismissal of his cause of action would result in this court’s condoning [Kinzie’s] conduct and would not serve as a deterrent in other cases involving similar conduct before this court.
¶ 17. The order acknowledges Kinzie’s argument that he qualified his response to interrogatory 11 by stating that he could not perform the activities listed “as before the incident.” The trial court rejected Kinzie’s argument, stating that Kinzie’s use of the words “as before the incident” failed to qualify his answer and failed to diminish the extent of his misrepresentation in his response. The trial court stated that it reviewed Kinzie’s deposition testimony, and it held that
although [Kinzie] may have testified that he has pain while performing certain *1025 physical activities, he also testified that he could not perform many other activities that he is clearly seen performing in the video surveillance, e.g.[,] walking without a cane and climbing up and down a ladder. More important, while [Kinzie] may have qualified some of his answers in his deposition when asked about his limitations, there is nothing ambiguous about his false answer to interrogatory 11. As the [supreme] court in Pierce ... recognized, “[a] false answer [to an interrogatory] is in some ways worse than no answer; it misleads and confuses the party.” Pierce, 688 So.2d at 1389.
¶ 18. In reviewing the interrogatory responses provided by Kinzie, we acknowledge that in the trial court’s order dismissing Kinzie’s case, the trial court bases its decision upon Kinzie’s response to interrogatory 11. In concluding that Kinzie misrepresented his injures under oath, the trial court’s order reflects no mention or consideration of other interrogatory responses, even though Kinzie referenced them when explaining the limitations on his activities. Interrogatory 5 inquired about any opinions rendered by a doctor or medical provider regarding Kin-zie’s injuries. Kinzie objected to interrogatory 5 as being outside the permissible scope of discovery, but he answered by explaining that he had been “assigned permanent work .restrictions of no lifting greater than twenty pounds, no frequent stooping or bending,” and that he “had been told that [he] can only perform work in the sedentary physical demand level at eight hours a day, five days a week.” Kin-zie further stated in his response that he had “been told that [he has] a ten percent whole person permanent impairment rating.”
¶ 19. We further find that Kinzie’s response to interrogatory 11 also contained qualifying language when he explained what he could do, but the trial court found this qualifying language insufficient. We disagree, particularly when the response to interrogatory 11 is considered in the context of other answers provided by Kinzie, specifically to interrogatory 5. The record before us indeed reflects that Kinzie’s medical restrictions allowed him to engage in some activity within the stated restrictions. The surveillance footage provided fails to show Kinzie engaging in any activity in violation of his medical restrictions. The video footage certainly appears to show Kinzie walking, and also assisting with the construction of his shed, without a cane. However, the video, as acknowledged by the Appellees, is incomplete and portions of time were edited out. Kinzie submitted affidavits of various witnesses to the trial court, asserting that when Kinzie helped them during the construction of his shed, he wore a back brace, had his cane with him, and took many breaks. Kinzie claims that portions of the footage showing him using his cane and resting were edited out of the excerpts provided to the trial court.
¶ 20. Kinzie also argues that the video footage showing him using a hammer, lifting a board, and climbing a ladder fails to provide a basis for finding he provided false testimony. Kinzie argues that these activities violated none of his medical restrictions. Additionally, the deposition testimony and interrogatory answers show that Kinzie never stated he lacked the physical capability to perform the activities shown on the surveillance video; rather, he explained that when he tries to or does perform, these tasks, he experiences pain. See Wood, 757 So.2d at 194 (¶ 13).
¶ 21. The record and briefs on appeal reflect that Kinzie was asked during his deposition about using hand tools and performing work around the house, and in *1026 response, Kinzie explained he could not use a lawn mower because it hurt his back.When asked whether he could work with tools with handles, Kinzie explained:
[I]f I tried to do any type of handyman work around the house, push a lawn mower or stuff like that with a handle, you know what a toothache is like, that’s just the way my lower back is. It [is] constantly coming..’.. All I can tell you is that [my sciatic nerve] has a pain going down in my back and down both of my legs. It’s not there every day, but it’s there for the majority of the time.
¶ 22. The Appellees argue that the surveillance video showed Kinzie using a hammer, and that Kinzie’s use of a tool with a handle shows Kinzie provided false testimony. However, the record reflects that Kinzie was not asked specifically about using a hammer, and Kinzie did not specifically state he could not use a hammer.
¶ 23. As stated earlier, the record contains the FCEs that show that Kinzie possessed more pull strength than push strength, and that his SI joint was dysfunctional. Also, while the FCEs document Kinzie’s dysfunctional SI joint and disc problems, the FCEs fail to document any arm or rotator-cuff injury. The record documents his diagnosis that included L4-5 hemilaminectomy and central-disc protrusion, disc herniation, and disc bulging; and the record shows that Kinzie underwent surgery for bilateral L4-5 hem-ilaminectomy and discectomy surgery on January 4, 2010. Therefore, the record shows that Kinzie suffered an injury to his back requiring lumbar, or in lay terms, back surgery. The FCEs provide eviden-tiary support for Kinzie’s explanation of why pushing a lawn mower by its handle would cause pain, due to the continual pushing force required to make the lawn mower move and due to engagement of the back and his dysfunctional SI joint in producing the force required to move the mower. However, the record reflects no injury to Kinzie’s shoulder, rotator-cuff, arm, or hand that would prevent him from lifting a hammer weighing less than twenty pounds and swinging it with his arm.
¶ 24. Although the Appellees asked Kinzie a broad question about the use of all tools with handles, Kinzie provided in his response an explanation with a specific example of how he was limited in the use of a lawn mower. The Appellees failed to follow up or clarify Kinzie’s responses with more specific questions relating to a hammer or similar small nonmotorized hand tool. While the question was broad, Kinzie provided a specific example in his response. As explained, nothing in his medical restrictions limited him from clasping a handle or lifting under twenty pounds. Kinzie’s deposition answer logically reflects that when responding to the Appel-lees’ broad question, Kinzie provided an example of the particular motion required to operate one device, a lawn mower. As' stated, the Appellees provided no follow-up questions about other types of tools requiring different force and movement from that of a lawn mower. After a review of the record, the Appellees’ failure to clarify the ambiguity of Kinzie’s response by questioning him about other types of tools, like the hammer in the video, or other small hand tools, fails to show Kinzie misrepresented his ability to use a lawn mower. See Wood) 757 So.2d at 194 (¶ 15) (finding an interrogatory response subject to different interpretations).
¶ 25. The omission of the footage from the video also defeats the Appellees’ argument that Kinzie misrepresented his injuries with respect to the cane. Kinzie’s deposition concedes that his doctor required no cane and wanted Kinzie to wean himself off of using it. Kinzie, as discussed, asserts that he keeps his cane in *1027 the car with him when traveling, because he “never know[s] when that pain is going to hit.” Kinzie further argues that when working on his shed, he took breaks not shown on the footage provided.
¶ 26. The supreme court found in Wood, 757 So.2d at 191 (¶ 3), that the trial court abused its discretion in dismissing a suit based on one response to an interrogatory. In Wood, the defense provided video surveillance of the plaintiff, Mark Wood, engaging in manual labor, despite Wood’s claim of a back injury. Id. at 192 (¶5). The defense argued the video surveillance was inconsistent with Wood’s interrogatory responses wherein he stated that his injury affected his attitude, concentration, school work, and “ability to do manual labor”; and he was “no longer ... able to enjoy tinkering with automobiles[,] as the stooping, bending, and squatting are painful.” Id. at (¶ 6). The defense moved to dismiss, asserting that Wood made “false statements under oath to deceive the defendants and the court.” Id. Upon review, the supreme court found that the interrogatory response was “ambiguously worded” and “subject to differing interpretations,” and that “it was not clearly established that Wood knowingly made false statements.” Id. at 194 (¶ 14). The supreme court further stated that “the alleged un-trüthfulness in Wood’s interrogatories, if any, does not constitute a sufficiently egregious discovery violation” to warrant dismissal. Id. at 195 (¶ 18).
¶ 27. Based on the foregoing, we find no evidence of misrepresentation by Kinzie in his responses to the interrogatories and deposition questions. As stated, we review Kinzie’s response to interrogatory 11 in the context of all of the interrogatory responses provided by him. See Pierce, 688 So.2d at 1389.[3] In so doing, the record shows Kinzie provided his medical physical limitations in his response to interrogatory 5. We also find no clear misrepresentation under oath by Kinzie in his deposition wherein he responded to a general question about all tool handles, with an answer limited to one type of equipment with a handle; and the Appellees failed to obtain a more responsive answer addressing all types of machines or tools with handles. We therefore find that the trial court abused its discretion in dismissing Kinzie’s case, and the trial court erred in dismissing it with prejudice. See Wood, 757 So.2d at 191 (¶ 3). Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPEL-LEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The briefs provide that Staffmark Investment LLC is a staffing company. Kinzie was employed by Triangle Trucking, and Triangle Trucking dispatched Kinzie to Belk as a truck driver.

. In Pierce, 688 So.2d at 1389, the supreme court held:
First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situation[s] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court’s orders.
(Quoting Batson v. Neal Spelce Assos. Inc., 765 F.2d 511,514 (5th Cir. 1985)).

. "[T]he focus must be on the intentional nature, as well as the pattern, of the plaintiff's conduct, which included deliberately providing false responses in three discovery mechanisms: the answers to interrogatories, the request for production of documents, and the deposition testimony.” Pierce, 688 So.2d at 1389.