# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01176-SCT

*WILLIE KINZIE*

*v.*

*BELK DEPARTMENT STORES, L.P., BELK, INC., DAVID FLOWERS, SHANAY GRANT, KATHY COFFEY, DONALD SMITH, NIKKI DAGGINS, RAY FAJA AND STAFFMARK INVESTMENT, LLC*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/05/2012 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | RICHARD PAUL WILLIAMS, III |
| | COURTNEY MCREYNOLDS WILLIAMS |
| | TERRIS CATON HARRIS |
| | THOMAS LYNN CARPENTER, JR. |
| | EDWARD J. CURRIE, JR. |
| | REBECCA B. COWAN |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | RICHARD PAUL WILLIAMS, III |
| | COURTNEY MCREYNOLDS WILLIAMS |
| | DARYL MATTHEW NEWMAN |
| ATTORNEYS FOR APPELLEES: | THOMAS LYNN CARPENTER, JR. |
| | JOSEPH WALTER GILL |
| | EDWARD J. CURRIE, JR. |
| | REBECCA B. COWAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND THE CASE IS REMANDED - 03/12/2015 |
| MOTION FOR REHEARING FILED: | |

MANDATE ISSUED:

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Willie Kinzie sued Belk Department Stores, L.P., Belk, Inc., David Flowers, Shanay Grant, Kathy Coffey, Donald Smith, Nikki Daggins, Ray Faja, Staffmark Investment, LLC, and John Does 1-5 (Belk Defendants) for injuries he sustained while unloading a trailer that had transported merchandise to a Belk retail store. The trial court dismissed Kinzie's lawsuit with prejudice, finding that Kinzie had misrepresented his injuries during discovery. The Court of Appeals reversed the judgment of the trial court and remanded the case, holding that Kinzie had not misrepresented his injuries and that the ultimate sanction of dismissal with prejudice was not warranted. Having granted *certioriari*, we affirm, in part, the judgment of the Court of Appeals; we reverse and remand the judgment of the Circuit Court of the First Judicial District of Hinds County.

### FACTS[1] AND PROCEDURAL HISTORY

Kinzie, a truck driver for twenty-eight years, was employed by Triangle Trucking at the time of the injuries at issue. Triangle trucking had dispatched Kinzie as a truck driver for Belk since 2007. At the time of his injury, Kinzie's job required him to pick up a loaded trailer of Belk cargo from the Belk distribution center in Byram, Mississippi, and unload it at other Belk locations throughout the United States.

On July 14, 2009, Kinzie picked up a loaded trailer at the Belk distribution center in Byram and traveled to a Belk facility in Cullman, Alabama. In the course of unloading his truck, which contained approximately 2,161 cases of

---

[1]The facts are taken *verbatim* from the opinion of the Court of Appeals.

cargo, weighing a total of 18,229[2] pounds, Kinzie injured his back. Shortly after he received his injury, an ambulance transported Kinzie to the emergency room, where physicians diagnosed him with a central-disc protrusion, disc desiccation, and disc bulging.

Kinzie initially engaged in a nonsurgical, conservative treatment. Then, on January 4, 2010, Kinzie underwent a bilateral L4-5 hemilaminectomy and discectomy surgery. On May 25, 2010, Kinzie's treating physician, Dr. Howard Holaday, explained that Kinzie possessed the capability to perform sedentary to light duty work, with a lifting restriction of no greater than twenty pounds, and restrictions on frequent stooping and bending. Although Kinzie claimed to need a cane for stability and assistance, Dr. Holaday provided no recommendation for Kinzie to use a cane. Kinzie asserted that Dr. Holaday also warned him to wean himself off of the cane. The results of functional capacity evaluations (FCEs) performed on April 20, 2010, and May 13, 2010, showed that Kinzie could perform work on a sedentary-physical demand level only. The FCEs also showed Kinzie possessed a dysfunctional sacroiliac (SI) joint.

On October 21, 2010, Kinzie filed suit against the Appellees, alleging that his back injury resulted from the Appellees' negligent loading of light cargo items on the bottom of the trailer and heavy cargo items on the top, as well as failure to secure the cargo. Kinzie submits that a medical estimate projects his future medical expenses will total $117,406.90. He also submits that his past medical expenses, lost wages, future medical expenses, and future lost wages amount to $664,890.37. During discovery, Kinzie, through counsel, provided responses to interrogatories and also provided deposition testimony, all of which responded to questions relating to his injury and explaining his present physical limitations resulting from his injury.

Interrogatory 5 inquired about any opinions rendered by a doctor or medical provider regarding Kinzie's injuries. Kinzie objected to interrogatory 5 as being outside the permissible scope of discovery, but answered by explaining that he had been "assigned permanent work restrictions of no lifting greater than twenty pounds," was prohibited from "frequent stooping or bending," and "had been told that [he] can only perform work in the sedentary physical demand level at eight hours a day, five days a week." Kinzie further stated in his response that he had "been told that [he has] a ten percent whole person

---

[2]In response to a motion to dismiss in the trial court, Kinzie alleged that he had been unloading a truck "carrying approximately 2,161 cases of cargo, weighing 18,229 lbs." In his complaint, Kinzie had alleged the gross weight to have been only 7,854 pounds.

3

impairment rating." Interrogatory 11 stated: "Describe all activities you were able to perform or participate in prior to July 14, 2009, that you cannot perform or participate in now." Kinzie answered the interrogatory by stating:

> As a result of the injuries sustained in this accident, I have the following limitations: not able to cut grass or take care of the lawn, unable to perform house cleaning, not able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities as before the incident.

Unbeknownst to Kinzie or his counsel, the Appellees hired an investigator to perform surveillance of Kinzie during the period of August 19, 2011, to September 22, 2011 (thirty-four days). Of the thirty-four day period surveillance, twenty-five minutes of excerpts of video footage were provided. The excerpts provided were edited and are not a complete video of the entire thirty-four-day time period. As acknowledged, excerpts of the footage provided show snapshots in time during the thirty-four-day surveillance period. The investigator prepared a report of Kinzie's activities during the period. The excerpts of the video footage reveal Kinzie driving and walking to the post office and his attorney's office, and working with another man on his shed in the backyard of his house. In response to the video evidence, Kinzie claims that he never violated his physician's restrictions, nor did he perform any task that he stated in his discovery responses that he could not perform, even while working on his shed.

***Kinzie v. Belk Dep't Stores***, 2014 WL 3417612, **1-2 (Miss. Ct. App. July 15, 2014), *cert. granted*, 156 So. 3d 981 (Miss. 2014).

¶2.     Staffmark Investment filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 37(e),[3] claiming that Kinzie had made misrepresentations under oath while

_____

[3]Mississippi Rule of Civil Procedure 37(e) provides:

[T]he court may impose upon any party or counsel such sanctions as may be just, including the payment of reasonable expenses and attorneys' fees, if any party or counsel (i) fails without good cause to cooperate in the framing of an appropriate discovery plan by agreement . . . or (ii) otherwise abuses the discovery process in seeking, making or resisting discovery.

4

responding to interrogatories and during his deposition. This motion later was joined by the remaining Belk Defendants. The trial court agreed and dismissed the case with prejudice on July 5, 2012. The trial court concluded:

> Based on the plaintiff's false representations made in his interrogatory response and in his deposition, along with the video surveillance the defendants obtained on him, this Court finds that the plaintiff's cause of action should be dismissed with prejudice as a sanction for his conduct. This Court further finds that no lesser sanction is appropriate under the circumstances.

¶3.     Kinzie appealed, and we assigned the case to the Court of Appeals, which held: "Based on the foregoing, we find no evidence of misrepresentation by Kinzie in his responses to the interrogatories and deposition questions. As stated, we review Kinzie's response to interrogatory 11 in the context of all of the interrogatory responses . . . ." ***Kinzie***, 2014 WL 3417612, at *7. We granted *certioriari* to clarify that, though Kinzie did commit a discovery violation, the ultimate sanction of dismissal with prejudice was not warranted.

## STANDARD OF REVIEW

¶4.     "Trial courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion . . . ." ***Ashmore v. Miss. Auth. on Educ. Television***, 148 So. 3d 977, 981 (Miss. 2014). "[I]f the trial court applies the 'correct legal standard,' we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a 'definite and firm conviction that the court below committed clear error.'" ***Id.*** at 982 (quoting ***City of Jackson v. Rhaly***, 95 So. 3d 602, 607 (Miss. 2012)). Thus, the Court should engage in "measured

Miss. R. Civ. P. 37(e).

restraint in conducting appellate review" and should not decide whether it would have dismissed the original action but whether dismissal amounted to clear error. *Ashmore*, 148 So. 3d at 982.

## ANALYSIS

¶5.    This Court has made it clear that a "trial court should dismiss a cause of action for failure to comply with discovery only under the most *extreme circumstances*." *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (emphasis added). Accordingly, we must determine whether the circumstances before us are sufficiently extreme to justify dismissal. An analysis of the relevant caselaw reveals that they are not.

¶6.    In *Pierce*, this Court held that dismissal was appropriate because the plaintiff had flat-out lied under oath about the existence of an eyewitness to the incident that had caused the plaintiff's alleged injuries and had "consistently obstructed the progress of the litigation by filing admittedly false responses to various discovery requests and by swearing to false testimony in depositions." *Id.* at 1390. This Court determined that dismissal was appropriate because the plaintiff had acted in bad faith, and that any sanction other than "dismissal would virtually allow the plaintiff to get away with lying under oath. . . ." *Id.* at 1390-91. The Court noted, however, that it would remain very reluctant to affirm such a harsh sanction, and did so in that case only because it provided "the *paradigm* situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a *great deal* of perjured testimony." *Id.* at 1391 (emphasis added).

¶7.    In other cases in which this Court has affirmed dismissal, the discovery violations were similarly egregious. In *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990 (Miss.

6

1999), the plaintiff, who could perfectly recall the details of several aspects of her life for many years, completely failed to disclose several invasive medical procedures and doctors' visits that were relevant to her claim. The trial court in that case found that the plaintiff made an "apparently deliberate attempt to subvert the judicial process," and she presented "no credible explanation for the total lack of congruence between her testimony and her medical records." *Id.* at 994. This Court affirmed, again noting that this case presented a rare instance "where the conduct of a party is so egregious that no other sanction will meet the demands of justice." *Id.* at 997.

¶8.     More recently, in ***Ashmore v. Mississippi Authority on Educational Television***, 148 So. 3d 977, 985 (Miss. 2014), we affirmed a dismissal where the plaintiff had "lied by concealing a right-knee surgery and degenerative joint disease in his right knee." The plaintiff also had hidden the existence of "a subsequent left-knee injury or degenerative disc disease in his back, despite medical reports to the contrary." *Id.* Once again, the discovery violations that justified dismissal were clear and unequivocal falsehoods.

¶9.     However, where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal. In ***Wood ex rel. Wood v. Biloxi Public School District***, 757 So. 2d 190, 193 (Miss. 2000), the plaintiff responded to an interrogatory regarding the nature of his injuries by stating, "I no longer am able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful." After viewing undercover surveillance video of the plaintiff "walking normally, squatting, twisting, bending, and generally performing normal daily functions without any indication of impairment or pain," the trial court dismissed the plaintiff's case.

7

*Id.* This Court reversed, finding that "the only discovery response which was contradicted by evidence at the hearing [on the motion to dismiss] was one ambiguously worded response to one interrogatory question." *Id.* at 194. As the plaintiff's response indicated that he could still perform certain tasks, just with less enjoyment than before, the Court held that the defendants did not establish that the plaintiff "knowingly made false statements in discovery and it was certainly not established that [the plaintiff] had engaged in a *pattern* of such false responses." *Id.* (emphasis added). The Court held "that the alleged untruthfulness in Wood's interrogatories, if any, d[id] not constitute a sufficiently egregious discovery violation such that no other sanction will meet the demands of justice." *Id.* at 195.

¶10.    We find the discovery violation in this case to be more similar to the alleged discovery violation in *Wood* than the unequivocally false and misleading discovery violations found in *Pierce*, *Scoggins*, and *Ashmore*. In *Wood*, the plaintiff stated that he could no longer enjoy certain activities as he could before being injured. Here, Kinzie stated that he could not perform several activities as he could before his injury.[4] He was truthful when it came to his medical record and his medically diagnosed work restrictions. Kinzie indisputably was injured. He went to an emergency room immediately after his accident and, at that time, was

---

[4]As related above, Kinzie's answer to Interrogatory 11 was as follows:

I have the following limitations: not able to cut grass or take care of lawn, unable to perform house cleaning, not able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities *as before incident*.

(Emphasis added.)

8

diagnosed with central-disc protrusion, disc desiccation, and disc bulging. He underwent an invasive surgical procedure on his spine. The activity observed in the undercover video did not stray outside of his medical work restrictions, and it did not encompass any of the specific activities that he stated he no longer could perform. The trial court found this to be a discovery violation. While the trial court cannot be said to have been manifestly wrong in its determination that there was, in fact, a discovery violation, the severe sanction of dismissal amounts to clear, reversible error amounting to an abuse of discretion.

¶11.    Kinzie did not blatantly lie about the existence of a witness, as did the plaintiff in *Pierce*, nor did he completely misrepresent years of medical history and procedures, as did the plaintiff in *Scoggins*, nor did he hide any other surgeries, as did the plaintiff in *Ashmore*. The Court finds no "total lack of congruence" between Kinzie's responses and his medical records, as the trial court found in *Scoggins*. *Scoggins*, 743 So. 2d at 994. Nor do we find this to be "the *paradigm* situation in which the plaintiff knowingly refused to be forthcoming and actively withheld the truth from the court and gave a *great deal* of perjured testimony" as this Court found in *Pierce*. *Pierce*, 688 So. 2d at 1391 (emphasis added). Instead, and similar to the plaintiff in *Wood*, Kinzie answered an interrogatory about the extent of his injuries in a way that the trial court thought was misleading. And here, although the trial court found Kinzie's response to be false, the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of *pattern* of misleading or false responses.

¶12.    Analogously, this Court has reversed a trial court's dismissal based on Rule of Civil Procedure 41(b) where the trial court failed to consider lesser sanctions, including "fines,

9

costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Am. Tel. & Tel. Co. v. Days Inn of Winona*, 720 So. 2d 178, 182 (Miss. 1998) (quotation omitted). Just as this Court found then, in this case, "it is not at all certain that [lesser] sanctions would have been futile in expediting the proceedings." *Id.* Although we do not find, as did the Court of Appeals, that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation, we hold that the trial court erred when it dismissed the case completely as a result of that violation while paying mere lip service to the possibility and practicality of lesser sanctions.

## CONCLUSION

¶13. Dismissal is appropriate only under the most extreme circumstances and only where lesser sanctions will not suffice. *Pierce*, 688 So. 2d at 1388-89. This is not an extreme case, and lesser sanctions can deter misleading responses without dismissing Kinzie's claims altogether. A jury will watch this video, and that may influence its ultimate determination. But a jury ought to make that ultimate determination, not the trial judge. The discovery violation at issue is not sufficiently extreme to justify a full and final dismissal of the case. We therefore affirm that portion of the judgment of the Court of Appeals which held that dismissal with prejudice was not warranted. We reverse the Court of Appeals' finding that the trial court abused its discretion when it determined that Kinzie had committed a discovery violation. We reverse the judgment of the Circuit Court of the First Judicial District of Hinds County dismissing the case with prejudice, and we remand the case for trial.

10

¶14.   **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS REVERSED AND THE CASE IS REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR AND KING, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., CHANDLER AND PIERCE, JJ.**

**COLEMAN, JUSTICE, DISSENTING:**

¶15.   I am of the opinion that the standard of review carries the instant case.   Abuse of discretion is the most deferential standard.  Under it, when the trial judge employs the correct legal standard, it is not our job, as the appellate court, to substitute our judgment in place of that of the trial judge's.  *See Ashmore v. Mississippi Auth. on Educ. Television*, 148 So. 3d 977, 982 (¶11) (Miss. 2014).  Given that Kinzie engaged in a flagrant discovery violation, I would uphold the trial judge's dismissal of the case as a sanction for the discovery violation. Accordingly, I respectfully dissent.

¶16.   In reaching its holding, the majority places great weight on *Wood ex rel. Wood v. Biloxi Public School District*, 757 So. 2d 190, 193 (¶ 11) (Miss. 2000).  I think *Wood* is clearly distinguishable.  Wood stated in a response to an interrogatory that, with his injuries, he was "no longer . . . able to *enjoy* tinkering with automobiles as the stooping, bending, and squatting are painful." *Wood*, 757 So. 2d at 193 (¶ 11) (emphasis added).  The defense then presented video surveillance of Wood doing activities involving stooping, bending, and squatting. *Id.* at 193-94 (¶ 11).  The Court considered that Wood had qualified his statement in his deposition, stating that he was able to do the activities, but performance of the activities was painful – or not as enjoyable. *Id.* at 194 (¶ 13).  The Court concluded that there

11

was more than one reasonable interpretation to Wood's statement, and it was not "clearly established that Wood knowingly made false statements in discovery." *Id.* at 194 (¶ 14). The ***Wood*** Court further noted that the defendant "would have a much stronger case if Wood had asserted during his deposition that he was in fact *unable* to perform his work functions *as before*." *Id.* at 194 (¶ 16) (emphasis added).

¶17.   Turning to the instant case, Kinzie stated in his interrogatory that he has the following limitations:

> *[N]ot able* to cut grass or take care of lawn, unable to perform house cleaning, not able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries, difficulty engaging in usual sexual activities, unable to play and hold grandchildren, and other activities *as before incident*.

(Emphasis added.)  The majority alludes that "as before incident" is a qualifier, meaning that Kinzie was unable to perform the listed activities *as well as* he was able to perform them before the incident.  The majority then relates Wood's qualifier – that he no longer enjoyed the activities – to Kinzie's alleged qualifier in the instant case.   However, I, like the trial judge, read "as before incident" to mean that Kinzie could not perform activities that he could perform *before* the accident.  In other words, Kinzie did not list all of the things he is not able to do that he could do before the accident.  My reading of Kinzie's interrogatory statement fits perfectly with what the ***Wood*** Court opined would make a stronger case.  It stated that the defendant "would have a much stronger case if Wood had asserted during his deposition that he was in fact unable to perform his work functions *as before*." *Id.* at 194 (¶ 16) (emphasis added).  Thus, Kinzie is distinguishable from ***Wood***, and ***Wood*** provides support for my argument.

12

¶18. The majority states: "Kinzie indisputably was injured. He went to an emergency room immediately after his accident and, at that time, was diagnosed with central-disc protrusion, disc desiccation, and disc bulging. He underwent an invasive surgical procedure on his spine." To be clear, my dissent does not question that Kinzie was injured, and the issue is not whether he violated his doctor's orders. The issue is whether the trial judge abused his discretion when dismissing Kinzie's claims for lying in his discovery responses.

¶19. Kinzie stated he was: "not able to cut grass or take care of lawn, unable to perform house cleaning, not able to drive but for very short periods of time, unable to stand or walk for long period[s] of time, cannot lift or carry objects or even groceries . . . ." Kinzie also stated in his deposition that, when he is outside the house, he has his cane with him. In the videos obtained by Staffmark Investment, Kinzie was working on a building in the rear of Kinzie's home; he was climbing a ladder, carrying wood, performing carpentry tasks, and not using his cane. Simply put, Kinzie engaged in activities he stated he was not able to do. Thus, I do not agree with the majority's characterization of Kinzie's statements as merely misleading.

¶20. The Court has recently summed up the abuse of discretion standard of review:

> In short, if the trial court applies the "correct legal standard," we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a "definite and firm conviction that the court below committed clear error." *See* ***City of Jackson v. Rhaly***, 95 So. 3d 602, 607 (Miss. 2012) (citations omitted). Although reasonable minds might differ as to the disposition, there is no support in the record that the trial court failed to apply the correct legal standard in the case *sub judice*, for indeed, the trial judge cited our decisions in ***Pierce*** and ***Scoggins*** as authority, dispelling any notion of applying an incorrect standard. The trial judge relied upon the standard as announced by this Court. Abuse of discretion is the most deferential standard of review appellate courts employ. *See* ***Fitch v. Valentine***,

13

959 So. 2d 1012, 1022 (Miss. 2007) ("this Court applies the deferential abuse of discretion standard of review"); *see also White v. Thompson*, 822 So. 2d 1125, 1128 (Miss. Ct. App. 2002) (abuse of discretion "is highly deferential").

*Ashmore v. Mississippi Auth. on Educ. Television*, 148 So. 3d 977, 982 (¶11) (Miss. 2014). While I – or any other member of the Court – may not have chosen the same sanction had I sat as the trial judge, I cannot agree that the lower court's dismissal of the case rises to the level of abuse of discretion.

¶21. When a discovery violation has occurred, the Court has held that dismissal is appropriate where "any other sanction beside dismissal would virtually allow the plaintiff to get away with lying under oath without a meaningful penalty." *Pierce*, 688 So. 2d at 1391. The *Pierce* standard gives the trial judge discretion on whether dismissal is an appropriate sanction. While the Court has held that consideration of lesser sentences is necessary in *American Telephone & Telegraph Co. v. Days Inn of Winona*, 720 So. 2d 178, 182 (Miss. 1998), *Days Inn* dealt with the issue of failure to prosecute, which is an issue that is mainly attributable to an attorney. *Cf. Pierce*, 688 So. 2d at 1388 ("Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client . . . ."). Thus, *Days Inn* is distinguishable from the instant case. Further, the *Pierce* standard considers whether the discovery violation was due to an attorney, and in the instant case, it was not.

¶22. The trial judge weighed the *Pierce* factors, distinguished the case *sub judice* from *Wood*, stated two specific examples of Kinzie misrepresenting his condition, and found that "any sanction other than . . . dismissal . . . would result in this [c]ourt's condoning the plaintiff's conduct." *See Ashmore*, 148 So. 3d at 982 (¶ 11); *see also Allen v. Nat'l R.R.*

14

***Passenger Corp.***, 934 So. 2d 1006, 1013 (Miss. 2006) (holding that there was no "definite and firm conviction" that the trial court had committed clear error when it weighed each *Pierce* factor, and the record did not contain evidence of a clear error).  In short, the trial judge applied the correct legal standard, determined the plaintiff had engaged in two separate discovery violations, and concluded that dismissal was the only appropriate remedy.

¶23.    Accordingly, I do not hold a definite and firm conviction that trial judge abused his discretion in dismissing the case.  I would affirm the judgment of the trial court.

**RANDOLPH, P.J., CHANDLER AND PIERCE, JJ., JOIN THIS OPINION.**