# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01736-SCT

*DEMARIO FERGUSON, AND ALL HEIRS-AT-LAW AND WRONGFUL DEATH BENEFICIARIES OF TERRANCE V. SHELBY, EXCEPT FOR LISA SHELBY AND LEWIS SHELBY*

*v.*

*THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, UNIVERSITY PHYSICIANS, PLLC AND AMERICAN MEDICAL RESPONSE, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/16/2013 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | JAMES D. SHANNON |
| | M. GARNER BERRY |
| | CLIFFORD B. AMMONS |
| | THOMAS R. JULIAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | BERNEY L. STRAUSS |
| ATTORNEYS FOR APPELLEES: | CLIFFORD B. AMMONS |
| | WALTER T. JOHNSON |
| | CLIFFORD B. AMMONS, JR. |
| | TOM JULIAN |
| | WILTON V. BYARS, III |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 12/10/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Lewis and Lisa Shelby filed a medical-malpractice action on behalf of the wrongful-death beneficiaries of their son, Terrance Shelby.   Shortly before trial, the trial judge

dismissed the Shelbys for discovery violations, but he allowed Terrance's brother, Demario Ferguson, to be substituted as the new wrongful-death plaintiff. After being substituted in the action, Ferguson admitted during his deposition that he previously had signed a false affidavit while the trial court was considering appropriate sanctions for the Shelbys' conduct. The trial judge then dismissed the entire action. Ferguson appeals the dismissal to this Court, and we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On September 13, 2008, American Medical Response, Inc. ("AMR"), transported Terrance Shelby from his house to the University of Mississippi Medical Center ("UMMC") following a 911 call, in which Terrance complained of having no feeling in his legs. His parents, Lewis and Lisa Shelby, followed the ambulance to the emergency room to meet their son. After waiting for hours and receiving no medical treatment, the Shelbys left UMMC and took Terrance to Baptist Medical Center ("Baptist"). Upon arrival at Baptist, the emergency room staff members took Terrance's blood pressure and provided him with immediate treatment. But despite the Baptist staff's efforts, Terrance died of kidney failure two days later.

¶3. On January 4, 2010, the Shelbys filed suit on behalf of all heirs-at-law and wrongful-death beneficiaries of Terrance Shelby against UMMC, alleging that its failure to treat Terrance constituted medical negligence. The Shelbys filed a Second Amended Complaint on August 19, 2010—adding AMR as a defendant—and alleged that the AMR emergency

2

medical technicians negligently failed to render treatment to Terrance during the transport from his home to the UMMC emergency room.

¶4. The case was set for trial on August 1, 2011. But about three weeks before trial, AMR[1] filed a motion to dismiss for discovery violations, alleging that the Shelbys had made misrepresentations about three different issues.

¶5. First, AMR alleged that the Shelbys had made misrepresentations concerning their marriage. During her deposition, Lisa testified that she and Lewis had been married "for about 28 years." Lewis also testified that he and Lisa were married, but did not specify how long ago the marriage had occurred. Following the depositions, when AMR requested the Shelbys' marriage license, the Shelbys responded that the license was lost in a house fire, but that a copy could be obtained from the Hinds County clerk's office. But AMR produced an affidavit from a paralegal who performed a search of the marriage records and found no record of the Shelbys' marriage.

¶6. Second, AMR alleged that Lewis had misrepresented his identity, criminal arrests, and convictions. During his deposition, Lewis testified that his only arrest or conviction in the last twenty-five years was a sexual-battery conviction around 1992. But AMR attached to its motion Lewis's criminal history, which showed numerous additional arrests and convictions. AMR also provided evidence that Lewis had used multiple aliases. Third, AMR alleged that Lisa also had misrepresented her past criminal convictions. In her

___

[1] For all relevant motions, UMMC filed a joinder to AMR's motions. For purposes of clarity, we refer to the defendants collectively as "AMR" going forward.

deposition, Lisa testified that her only arrest was for carrying a concealed weapon, but AMR later discovered that Lisa also had pleaded guilty to two separate forgery charges.

¶7. Two weeks later, AMR filed a supplemental motion to dismiss for discovery violations, alleging that Lisa also had lied about the existence of another biological son. Lisa had testified as follows during her deposition:

> Q. And tell me the names of your children.
> A. Terrance Shelby, and I had another son, Alonzo Shelby, but he passed right after birth.
> . . .
> Q. And other than . . . Terrance and Alonzo, *those are the only children you've ever had?*
> A. *Yes.*
> Q. *So Terrance would have no other siblings, brothers or –*
> A. *No.*

(Emphasis added.) But AMR later had discovered that Lisa had another biological son, Demario Ferguson, which was confirmed upon examination of Ferguson's birth certificate. AMR alleged that the Shelbys had lied about Ferguson's existence to avoid sharing proceeds from the suit.

¶8. The Shelbys responded and argued that they did not commit perjury as to their marriage, because they considered themselves married due to the length of their relationship, even though they never had participated in a formal ceremony. They argued that Lisa was not asked if she was "legally married," and that if she had been, she would have responded that she was not. They also argued that they did not commit perjury concerning their criminal records, because any discrepancy in their criminal records could be traced to a lack of memory, not willful intent to lie.

4

¶9.     Finally, the Shelbys attempted to explain the allegations concerning Ferguson.  They argued that, although Lisa was Ferguson's biological mother, the Department of Human Services ("DHS") took him away from her just months after birth.  Ferguson later was released into the custody of Lisa's mother, Mable Dabney, with whom he had lived ever since.  The Shelbys argued that Ferguson always had believed that Mable was his biological mother, and that Lisa was his aunt, rather than his mother.  The Shelbys described the situation as a "family secret."

¶10.    The Shelbys alleged that they finally had informed Ferguson of this "family secret" around the time that AMR filed its supplemental motion to dismiss.  The Shelbys filed an affidavit signed by Ferguson a few days later, wherein Ferguson stated, in pertinent part:

> 2.     Prior to last week, I knew Mable Dabney to be my biological mother and believed Lisa Shelby to be an aunt.
> 3.     Lisa Shelby called me last week and told me that she was in fact my biological mother.  *This was the first time that anyone had revealed to me that Mable Dabney was not my mother but my grandmother who had raised me from birth.*
> 4.     I always had a close relationship with Terrance Shelby *but did not know until last week that he was my actual brother.*

(Emphasis added.)

¶11.    After a hearing, the trial judge entered an order granting AMR's motion to dismiss.  After briefly describing the Shelbys' misrepresentations, the trial judge stated, in pertinent part:

> The Court will not go into detail regarding discrepancies as such can be found in the oral argument transcript taken July 22, 2011.  Needless to say, the Court has found plaintiffs have deliberately misled their own counsel, defense counsel and the Court . . . . Turning to the issue of sanctions, the Court would note, even if it could look past the marriage and criminal records issue, which

5

it does not, the Court cannot excuse Ms. Shelby denying the existence of her biological son, a rightful wrongful death beneficiary . . . While the Court is sympathetic to the underlying family issue, it is no excuse for lying to this Court under oath. The Court has carefully considered precedent on this issue. *See* ***Scoggins v. Ellzey Beverages***, 743 So. 2d 990 (Miss. 1999); ***Pierce v. Heritage Properties***, 688 So. 2d 1385 (Miss. 1997). The Court is cognizan[t] of the fact the Supreme Court has mandated it to impose the least restrictive sanction that will accomplish the purpose for which it was imposed . . . . IT IS THEREFORE ORDERED AND ADJUDGED, that Mr. and Ms. Shelby should be and are hereby dismissed from this action as a sanction and are not entitled to any recovery.

¶12. Also in his order, the trial judge stated that "dismissal of the Shelbys does not prevent other wrongful death beneficiaries such as Demario Ferguson from seeking redress in this action." Following, on August 9, 2011, Plaintiffs' counsel filed a motion to substitute Ferguson as the representative party-plaintiff. AMR filed a response opposing the motion, but the trial judge allowed Ferguson to be substituted as the named plaintiff on behalf of all remaining beneficiaries.

¶13. After Ferguson's entry as the named plaintiff, AMR filed another motion to dismiss for discovery violations upon discovering that Ferguson also had committed perjury. AMR attached to its motion Ferguson's deposition, wherein Ferguson testified, in pertinent part:

> Q. Who is your mother?
> A. Lisa Shelby.
> . . .
> Q. Did you *always* know, growing up, that Lisa was your mom?
> A. *Yes, sir.*
> Q. And you *always* understood that Mable Dabney was your grandmother?
> A. *Yes, sir.*

(Emphasis added.)

¶14. Defense counsel then asked Ferguson to review his prior affidavit, and he admitted that his signature was on it but claimed that he had no specific recollection of it. Ferguson testified further that the contents of the affidavit were false.[2] He testified that he recalled being asked to sign something around July 26, 2011, but that he was not sure if the affidavit was what he was asked to sign, because "there was a bunch of paperwork. I recall there being a bunch of paperwork, and I remember we went downtown and signed them, but I don't recall those statements."

¶15. On August 16, 2013, the trial judge—applying the "same legal standard" as he did in his order dismissing the Shelbys—entered a final judgment dismissing the case with prejudice.[3] And although the Shelbys' conduct is relevant background information, the sole issue on appeal is the trial judge's dismissal of Ferguson's complaint.

## STANDARD OF REVIEW

¶16. "Trial courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion." *Ashmore v. Miss. Auth. on Educ. Television*, 1484 So. 3d 977, 981 (Miss. 2014) (citing *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997)). Moreover, "[t]he power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of

---

[2] Mable Dabney also testified in her deposition that the Shelbys' "family secret" never existed and that Ferguson always knew that Lisa was his biological mother.

[3] In his order dismissing the Shelbys, the trial judge noted specifically that he was "cognizan[t] of the fact the Supreme Court has mandated [him] to impose the least restrictive sanction that will accomplish the purpose for which it was imposed."

7

justice and the court's control of its own docket." **Pierce**, 688 So. 2d at 1388 (citing **Palmer v. Biloxi Reg'l Med. Ctr.**, 564 So. 2d 1346, 1367 (Miss. 1990)).

¶17. "[I]f the trial court applies the 'correct legal standard,' we must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a 'definite and firm conviction that the court below committed clear error.'" **Id.** (citing **City of Jackson v. Rhaly**, 95 So. 3d 602, 607 (Miss. 2012)). Stated differently, "the Court should engage in 'measured restraint in conducting appellate review' and should not decide whether it would have dismissed the original action but whether the dismissal amounted to clear error." **Kinzie v. Belk Dep't Stores, L.P.**, 164 So. 3d 974, 977 (Miss. 2015) (citing **Ashmore**, 148 So. 3d at 982).

## ANALYSIS

¶18. This Court consistently has held that "the trial court should dismiss a cause of action for failure to comply with discovery *only under the most extreme circumstances*." **Pierce**, 688 So. 2d at 1388 (citing **Hapgood v. Biloxi Reg'l Med. Ctr.**, 540 So. 2d 630, 634 (Miss. 1989), and **White v. White**, 509 So. 2d 205, 209 (Miss. 1987)) (emphasis added). But we find that the trial judge's dismissal here was warranted.

¶19. This Court upheld a trial judge's dismissal for discovery violations in **Pierce v. Heritage Properties, Inc**. The plaintiff there, Pierce, sued multiple defendants alleging numerous causes of action after a ceiling fan fell and hit her on the head. **Pierce**, 688 So. 2d at 1387. Throughout discovery, Pierce represented that there were no witnesses to the accident. **Id.** But the defendants later learned that Pierce was not alone at the time of the

8

accident and that there was a witness. *Id.* The trial judge determined that Pierce's presentation of false testimony under oath throughout the discovery process was sufficient to justify dismissal of the case. *Id.* On appeal, this Court affirmed the dismissal "to protect the integrity of the judicial process." *Id.*

¶20. Recently, this Court again upheld a dismissal for discovery violations in *Ashmore v. Mississippi Authority on Educational Television*. There, the Ashmores suffered injuries in a motorcycle accident with a vehicle driven by an employee of the Mississippi Authority of Educational Television. *Ashmore*, 148 So. 3d at 979. But the trial judge dismissed the Ashmores' personal-injury case after learning that they had, in sworn testimony, intentionally misrepresented facts concerning prior medical history and the nature and extent of their injuries sustained in the accident, describing the plaintiffs' conduct as a "deliberate attempt to subvert the judicial process." *Id.* at 980.

¶21. In upholding the Ashmores' dismissal, this Court considered the four *Pierce* factors, which are: (1) whether the discovery violations were the result of willfulness or bad faith; (2) whether the deterrent value may be achieved by lesser sanctions; (3) whether the wronged party has suffered prejudice as a result of the discovery violation;[4] and (4) whether the abuse is attributable solely to trial counsel instead of a blameless client. *Id.* at 981. We ultimately determined that the trial judge did not abuse his discretion by dismissing the Ashmores' case,

---

[4]While this consideration is relevant, the *Pierce* court held that "there is no requirement that the defendant be *substantially* prejudiced . . . ." *Pierce* 688 So. 2d at 1391 (emphasis added); *see also* *Allen v. Nat'l R.R. Passenger Corp.*, 934 So. 2d 1006, 1013 (Miss. 2006) ("substantial prejudice is not necessary under this test").

9

as the plaintiffs intentionally had misrepresented facts, and no less drastic sanctions would have had a sufficient deterrent effect.  *Id.* at 986-987.

¶22.    With this precedent in mind, we find first here that the trial judge did not abuse his discretion when he found a discovery violation.[5]  Ferguson admitted that the affidavit he had signed was false.  Ferguson's argument that his actions were "unknowing" and "without malice" because he merely signed some paperwork placed in front of him is unconvincing.  Indeed, the filing of a false affidavit is perjury and punishable under both state and federal law.  *See* Miss. Code Ann. § 97-9-19 (Rev. 2014); 18 U.S.C.A. §1621.  Our statute does not contain an exception for when one simply fails to take the time to read the affidavit before signing it.  And it is well-settled that a party cannot avoid the consequences of a signed legal document by claiming he did not read it.  *See, e.g.*, **MS Credit Ctr., Inc. v. Horton**, 926 So. 2d 167, 177 (Miss. 2006).

¶23.    We find also that the trial judge did not abuse his discretion by dismissing the case.  An application of the **Pierce** factors supports this position.  First, there is substantial evidence that Ferguson misled the trial court, and we cannot fault the trial judge for finding that Ferguson's conduct was willful and/or in bad faith. Ferguson was in no way required to sign the fraudulent affidavit.  He does not argue that he was not given an opportunity to read it before signing, nor does he argue that he was coerced in any way.  Moreover, at the time he

---

[5] As mentioned previously, in the order dismissing Ferguson's case with prejudice, the trial judge stated that his decision was based on the same legal standard applied in the dismissal of the Shelbys' case, where he carefully considered precedent on the issue, specifically **Pierce** and **Scoggins v. Ellzey Beverages**, 743 So. 2d 990 (Miss. 1999).

signed the affidavit, he stood to gain because the case likely would have been dismissed altogether if the Shelbys were dismissed,[6] leaving Ferguson with no opportunity to recover.

¶24.   As for the second *Pierce* factor, it is clear the trial judge recognized that he was required to impose the least restrictive sanction.  In his order, the judge explicitly provided that he had considered other alternatives, such as imposing fees or reducing the verdict. Ultimately, the trial judge determined that dismissal was the least restrictive sanction considering the conduct at issue, and we cannot say that he abused his discretion in doing so, especially in light of the plaintiffs' respective conduct in this case.

¶25.   Third, we note that both UMMC and AMR have been prejudiced by the delay caused by both the Shelbys' and Ferguson's misrepresentations.  The trial initially was set for August 2011, and the order dismissing the entire action was not entered until August 2013. This delay was in no way caused by UMMC or AMR; rather, they have incurred additional expenses by being forced repeatedly to bring the plaintiffs' misrepresentations to the attention of the trial court.  In short, both the Shelbys' and Ferguson's conduct have caused substantial delay and additional costs in the disposition of this matter.

¶26.   Finally, the trial judge found that the Shelbys' counsel was not to blame, and he implicitly found the same as to Ferguson when he dismissed the case with prejudice based on "the same legal standard."  Also, Ferguson stated in his response to AMR's motion to dismiss that he did "not accuse the Shelbys' past counsel, Garner Berry, or anyone else who may have drafted the affidavit with any wrongdoing."

---

[6]At the hearing on AMR's third motion to dismiss, the trial judge stated that "[q]uite honestly, but for that affidavit nobody would be here today."

11

¶27.    This Court recently analyzed another discovery-violation case in ***Kinzie v. Belk***

***Department Stores***, 164 So. 3d 974 (Miss. 2015).  The plaintiff there, Kinzie, injured his

back while unloading a truck on the job.  ***Id.*** at 975.  Kinzie filed suit against Belk, alleging

that his injury resulted from Belk's negligent loading of the truck trailer.  ***Id.***   When

responding to an interrogatory, Kinzie described his injuries as follows:

> As a result of the injuries sustained in this accident, I have the following
> limitations: not able to cut grass or take care of the lawn, unable to perform
> house cleaning, not able to drive but for very short periods of time, unable to
> stand or walk for long period(s) of time, cannot lift or carry objects or even
> groceries, difficulty engaging in usual sexual activities, unable to play and hold
> grandchildren, and other activities as before the incident.

***Id.*** at 976.

¶28.    The defendants hired an investigator to perform surveillance of Kinzie and provided

twenty-five minutes of edited video footage excerpts at trial.  ***Id.***   The excerpts revealed

footage of Kinzie driving and walking to the post office and his attorney's office and

working on a shed in his backyard.  ***Id.***   In response to allegations of discovery violations,

Kinzie argued that he did not violate any of his physicians' orders.  ***Id.***   Based on the

evidence, the trial judge dismissed Kinzie's case with prejudice, determining that Kinzie had

committed a discovery violation.  ***Id.*** at 977.

¶29.    On appeal, this Court held that, although Kinzie *had* committed a discovery violation,

his conduct did not warrant dismissal, specifically providing that "although the trial court

found Kinzie's response to be false, the perceived falsehood arose in an isolated incident, and

it certainly has not been established that Kinzie's statements in discovery indicate any kind

of *pattern* of misleading or false responses." ***Id.*** at 979 (emphasis in original).  This Court

also found persuasive that there was no "total lack of congruence" between Kinzie's interrogatory response and the truth. *Id.*

¶30. Ferguson's case warrants different treatment. Unlike Kinzie, a "total lack of congruence" exists between the substance of Ferguson's affidavit and his deposition testimony. And Ferguson's false affidavit was submitted at a time when Ferguson believed it would help his chance of success, but he abandoned it once it was clear that it could no longer help him. Ferguson's conduct also was a part of a larger pattern of misrepresentations that he continued after the Shelbys were dismissed from the action. In short, Ferguson's conduct is much more analogous to the conduct in *Pierce*, where the plaintiff intentionally misled the court.

¶31. "Abuse of discretion is the most deferential standard of review appellate courts employ. A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Ashmore*, 148 So. 3d at 982. Based on the evidence and an application of the *Pierce* factors, we find that the trial judge did not abuse his discretion by dismissing the case for discovery violations.

**CONCLUSION**

¶32. The trial judge did not abuse his discretion by dismissing this action for discovery violations. As such, we affirm the judgment of the Hinds County Circuit Court.

¶33. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

¶34.	Because the trial court failed to consider sanctions less than dismissal with prejudice, I respectfully dissent.

¶35.	"Trial courts are afforded broad discretion in discovery matters, and this Court will not overturn a trial court's decision unless there is an abuse of discretion. . . ." *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 981 (Miss. 2014). "[I]f the trial court applies the 'correct legal standard,' we must affirm the decision, regardless of what any one of us individually might have ruled had we been the judge, unless there is a 'definite and firm conviction that the court below committed clear error.'" *Id*. at 982 (quoting *City of Jackson v. Rhaly*, 95 So. 3d 602, 607 (Miss. 2012)).

¶36.	A "trial court should dismiss a cause of action for failure to comply with discovery only under *the most extreme circumstances*." *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997) (emphasis added). This Court has reversed a trial court's dismissal based on Rule of Civil Procedure 41(b) when the trial court failed to consider lesser sanctions, including "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Am. Tel. & Tel. Co. v. Days Inn of Winona*, 720 So. 2d 178, 182 (Miss. 1998) (quotation omitted).

¶37.	In this case, Lewis and Lisa Shelby committed serious discovery violations, including, *inter alia*, lying about being legally married, attempting to subvert attempts to identify Terrance Shelby's potential heirs, particularly by denying the existence of Demario Ferguson

14

and other children, and lying about their criminal records. But even though the Shelbys' misbehavior may have warranted dismissal with prejudice, the same punishment is not necessarily appropriate for Ferguson. The only inconsistency in Ferguson's testimony is related to when he learned that Lisa Shelby was his biological mother. At the request of the Shelbys and their attorney and before the Shelbys were dismissed from the lawsuit with prejudice, Ferguson allegedly signed an affidavit stating that he just recently had learned that Lisa Shelby was his biological mother and that his biological parentage was a family secret. When confronted with the affidavit during a deposition, Ferguson said that he had not read the affidavit previously and would not have signed it because he always had known that Lisa Shelby was his biological mother. He also said that he was listed as one of Terrance Shelby's brothers in Terrance's funeral program. However, regardless of the circumstances under which the affidavit in question was executed, the question of when Ferguson learned that Lisa Shelby was his biological mother was not pertinent to resolving whether he has a valid wrongful death claim against University of Mississippi Medical Center and AMR or to establishing whether he is a statutory wrongful death beneficiary. To conflate Ferguson's claims and Ferguson's alleged untruths outside the context of the Shelbys' continued fraud on the trial court is plain error, especially because the affidavit allegedly was executed during a time when the trial court found that the Shelbys were trying to conceal the existence of potential wrongful death beneficiaries fraudulently.

¶38.    The trial court did not apply the correct standard in dismissing Ferguson's wrongful death case for discovery violations. The trial court found, with regard to Ferguson, that:

15

> THIS CAUSE came on for hearing on the supplemental motion of the defendants to dismiss this action with prejudice due to Plaintiff's discovery violations. The Court previously dismissed Lisa and Lewis Shelby with prejudice by Order dated July 27, 2011, due to their repeated material misrepresentations under oath. Applying the same legal standard set forth in that July 27, 2011 Order, and after considering the briefs and hearing oral argument, this Court finds that Defendants' Supplemental Motion to Dismiss is well taken and should be granted.

In other words, with regard to Ferguson, the trial court specifically failed to consider "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings" and therefore erred. *Am. Tel. & Tel. Co.*, 720 So. 2d at 182.

¶39.   With regard to Ferguson's wrongful death claims, the trial court erred by failing to consider sanctions less than dismissal with prejudice.  I respectfully dissent.

**KING, J., JOINS THIS OPINION.**