# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00211-SCT

*VICTOR MAY*

*v.*

*KENNETH JARNELL AUSTIN, A MINOR, BY
AND THROUGH HIS PARENTS AND NATURAL
GUARDIANS, REX AUSTIN AND REGINA
AUSTIN AND MISSISSIPPI FARM BUREAU
CASUALTY INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2016 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | DON H. EVANS |
| | KATHERINE MARY BOUSQUET |
| | STEVEN JAMES GRIFFIN |
| | RICHARD JASON CANTERBURY |
| | JOE S. DEATON, III |
| | MICHAEL CHAD MOORE |
| | QUENTIN A. DANIELS |
| | DARYL MATTHEW NEWMAN |
| | JOHN ALFRED WAITS |
| | CHRISTIE EVANS OGDEN |
| | GLEN K. TILL, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DON H. EVANS |
| | CHRISTIE EVANS OGDEN |
| ATTORNEYS FOR APPELLEES: | STEVEN JAMES GRIFFIN |
| | JOE S. DEATON, III |
| | RICHARD JASON CANTERBURY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/12/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., BEAM AND CHAMBERLIN, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This appeal stems from the Hinds County Circuit Court's decision to dismiss the plaintiff's claims with prejudice. The circuit court entered its decision after finding that Appellant Victor May willfully concealed his past injuries and accidents, significantly prejudicing the defendants' ability to proceed with their case. After reviewing the circuit court's decision for an abuse of discretion, we find that the circuit court did not err in finding that the plaintiff committed numerous discovery violations which resulted in inordinate delay and increased costs to the defendants. As a result, we affirm the decision of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 19, 2011, the vehicles driven by Victor May and Kenneth Austin collided at the intersection of Northside Drive and Hanging Moss Road in Jackson, Mississippi. Claiming that the wreck produced injuries to his neck, lower back, and right shoulder, May filed suit in Hinds County Circuit Court, seeking damages for Austin's alleged negligence in causing the accident.

¶3. Shortly after May filed his complaint, the parties engaged in discovery. A year and a half later, the defendants filed a motion requesting that the court dismiss the matter with prejudice, due to May's inconsistent and deliberately false testimony throughout the discovery process. The defendants cited the plaintiff's interrogatory and production responses and compared them to the testimony provided at a later deposition. In these responses, May consistently denied having had any injuries or medical treatment to his neck, lower back, and right shoulder prior to the April 2011 collision. The defense also referenced

2

medical records independently obtained via subpoena from the Kosciusko Medical Clinic, which indicated that the plaintiff not only previously suffered from significant, unrelated injuries to his neck and back, but that he was treated just four months prior to the accident for issues related to his right shoulder.

¶4.     The circuit court denied the defendants' motion. Noting first that the court held the matter under advisement until this Court ruled on the issues in ***Kenzie v. Belk Department Stores***, 164 So. 3d 974 (Miss 2015), the trial court reasoned that, much like the decision in ***Kenzie***, dismissal as a sanction for the discovery violations would not be warranted. Although the court found that "the [p]laintiff's false and/or misleading discovery answers denying any prior injury to his neck or shoulder did constitute a violation of the discovery rules," it reasoned that such a violation was not indicative of a motive to engage in a pattern of deception. Rather, the court determined that the plaintiff's willingness to sign a medical release authorization, enabling the defendants to obtain the medical records which conflicted with the plaintiff's testimony, showed that any alleged deception was not intentional. As a result, the court allowed the defendants to move for lesser sanctions but decided that dismissal was not appropriate.

¶5.     Within a week, the defendants filed a motion for reconsideration of the court's order denying their motion to dismiss. Therein, the defense claimed the court errantly based its decision on a misrepresentation by the plaintiff. Citing the court's order, the defendants suggested that the court's decision was largely based on the plaintiff's execution of a medical authorization, which the court determined was at least "slightly indicative of a lack of motive

to engage in a pattern of deception." However, the defendants contended that such an authorization was never signed.

¶6.    Pointing to Austin's interrogatories, the defendants explained that when the plaintiff was asked to sign a release for his medical records, he blatantly objected to signing any sort of authorization and persistently denied any prior injuries or related medical conditions. The defendants alleged that at no time after this refusal did the plaintiff provide a medical authorization, and that such refusal created hardship and an inability to prepare an adequate defense. Consequently, Austin was forced to subpoena May's medical providers for the information. The defendants claimed that it was only after they obtained May's prior medical records that they learned of his earlier problems and injuries involving his neck, shoulder, and back.

¶7.    On May 6, 2016, the trial court issued its order granting the defendant's motion for reconsideration. Before describing the time line as it related to the defendant's independent discovery of May's injuries, the trial court explained its understanding of the proposed violations.

> During discovery, the Plaintiff *unequivocally denied* having ever sustained injuries or having previously sought medical treatment regarding any of those body parts he claimed to be injured solely due to the subject car accident– specifically his neck, lower back and right shoulder. The Defendants subpoenaed Plaintiff May's prior medical records and discovered that May had been untruthful about his medical history. Plaintiff May's lack of candor was clear both under oath in his deposition and in sworn written discovery responses. In addition, after Plaintiff May was caught, his litigation subterfuge continued. In a feeble attempt to excuse his earlier lack of candor in the deposition, Plaintiff May provided a sworn affidavit contradicting portions of his earlier sworn testimony without any explanation as to the inconsistencies,

4

> making it impossible for any party, or for this Court, to ascertain which sworn version to believe as true.

The trial court then identified the two issues central to the motion for reconsideration: May's denial of any car accidents, neck injuries, or neck-related treatment prior to the collision with Austin, and the recently discovered medical records related to severe shoulder-pain treatment May had obtained just four months prior to the subject accident. After identifying these concerns, the court used a "totality of the circumstances" approach to granting dismissal. Noting first that the plaintiff took an inordinate amount of time to respond to the defendant's original motion to dismiss, the court acknowledged that the plaintiff's eventual response included an affidavit from Victor May. Therein, May swore that he "voluntarily signed a medical authorization giving [d]efense counsel access to [his] prior records. [He] was not intending to hide or mislead anyone as to [his] prior medical condition." Basing its ruling on plaintiff's counsel's representation that May voluntarily had signed a medical authorization so the defendants could obtain his prior records with impunity, the court denied the initial motion to dismiss.

¶8.    The trial court noted that it initially found May's assurance that he voluntarily cooperated with the defendant's discovery requests by signing a blank medical authorization to be extremely relevant. May's alleged cooperation in providing this authorization became a deciding factor as to whether the discovery violations had been willful or grossly inadvertent. The court decided that, although May had committed unmistakable discovery violations regarding issues fundamental to the defendants' ability to defend the lawsuit, by providing the medical authorizations, he had demonstrated a lack of motive to engage in a

5

pattern of deception. As a result, the court ruled initially that, if requested, lesser sanctions may be appropriate, but dismissal was not warranted.

¶9. Prior to the hearing on the motion for reconsideration, the court considered its previous ruling and the parties' claims regarding the existence of the medical authorization. On August 3, 2015–more than a month prior to the motion's hearing–the court requested that "the Plaintiff, within ten (10) days from today's date, [] submit copies of the medical authorization or authorizations executed by the Plaintiff . . . [as] described in the Plaintiff's Response to the Defendant's Motion to Reconsider and at the previous hearing on the original motion [to dismiss]." May failed to respond to the court's email or provide any additional documentation, as directed. Furthermore, at the hearing on September 28, 2015, plaintiff's counsel admitted that he did not have a copy of any medical authorization allegedly signed by the plaintiff and could not provide any proof that such authorization existed.

¶10. The trial court noted that a plaintiff is not required to provide a defendant with a signed medical authorization when not specific to a medical provider; though it is routinely done to facilitate the discovery process. With that in mind, May's asserted willingness to assist the defense in the discovery process was a deciding factor in the trial court's initial finding that he lacked intent to conceal any prior injuries or medical conditions from the defendants. After finding that May's "lies and omissions during discovery . . . compounded, rather than mitigated, the factual misrepresentation by the [p]laintiff and his counsel, which ha[ve] now been shown to be false," the court found that dismissal with prejudice was "the

6

only reasonable and sufficient sanction available under these circumstances to end this ongoing pattern of deceit and to deter others from similar, reprehensible conduct in litigation."

¶11. May appeals the trial court's ruling, claiming that his discovery responses did not justify dismissal of the case, and that the court erred in finding that he lied about executing the medical release for the defendants. Accordingly, the sole issue on appeal is whether the trial court was justified in dismissing the case after making factual findings concerning May's repeated and unequivocal misrepresentations throughout discovery.

## LAW AND ANALYSIS

### I.       Standard of Review

¶12. This Court recognizes the trial court's inherent power to dismiss a case as a "means necessary for orderly expedition of justice and the court's control of its own docket. Nevertheless, the trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Pierce v. Heritage Props., Inc.*, 688 So. 2d 1385, 1388 (Miss. 1997).

¶13. The Court reviews such discovery-violation dismissals under the abuse-of-discretion standard. *Id.* "Abuse of discretion is the most deferential standard of review appellate courts employ." *Ashmore v. Mississippi Auth. on Educ. Television*, 148 So. 3d 977, 982 (Miss. 2104). "When this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right standard, then this Court considers whether the decision was one of several reasonable ones

7

which could have been made." *Pierce,* 688 So. 2d at 1388. "In short, if the trial court applies the 'correct legal standard,' [this Court] must affirm the decision regardless of what any [justice] individually might have ruled had [her or she] been the judge, unless there is a 'definite and firm conviction that the court below committed error.'" *Ashmore*, 148 So. 3d at 982. If there is no "clear error in judgment in the conclusion it reached upon weighing the relevant factors," this Court will affirm the trial court's dismissal. *Cooper v. State Farm Fire and Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990).

## II.     Legal Standard: Discovery Violation Dismissals

¶14.     A trial court's authority to sanction a party for discovery violations is provided for by Mississippi Rule of Civil Procedure 37.    The rule empowers trial courts with the discretionary authority to "impose upon any party or counsel such sanctions as may be just." M.R.C.P. 37.  This Court has found that those justified sanctions include the "death penalty" of a civil action–dismissal with prejudice–"when the deterrent value of Rule 37 cannot be achieved by the use of less drastic sanctions." *Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990, 996 (Miss. 1999) (quoting *Pierce*, 688 So. 2d at 1389.)

¶15.     This Court evaluated the application of Rule 37 and the appropriateness of dismissal as a sanction in *Pierce*. There, the plaintiff sought damages from several defendants on the theories of negligence, breach of warranty, and strict liability, after suffering injuries when a fan installed above her bed fell from the ceiling and landed on top of her. *Pierce*, 688 So. 2d. at 1387. Throughout discovery, Pierce maintained that she was alone when the fan fell from the ceiling, making her the only witness to the event.  However, following a trial on the

8

matter, and the trial court's decision to vacate the jury's verdict, the defense discovered that Pierce was not alone when the fan fell; rather, her male companion was identified as having witnessed the accident as well. *Id.* at 1388.

¶16.    Pierce responded to the newly discovered information by acknowledging that she had given false testimony. She argued that she never had intended to deceive the court; instead, she intended only to shield her parents from the knowledge that their daughter had entertained an overnight guest that evening. The court reviewed this information and determined that Pierce's "intentional presentation of false testimony warranted the sanction of dismissal with prejudice." *Pierce*, 688 So. 2d at 1388.

¶17.    On appeal, this Court adopted the Fifth Circuit's analysis of trial-court discovery violation dismissals. The standard requires that:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in a situation where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So. 2d at 1389 (citing *Batson v. Neal Spelce Assocs.*, 765 F.2d 511, 514 (5th Cir. 1985)).

¶18.    In applying this analysis, the Court determined that Pierce's failure to comply was a result of willfulness and bad faith, which obstructed the progress of litigation. The Court agreed that less drastic sanctions in the form of fees or procedural mechanisms would not

9

achieve the deterrent value of dismissal. Instead, it found that any sanction other than dismissal for such "manifestly false" representations would "virtually allow the plaintiff to get away with lying under oath without meaningful penalty." *Pierce*, 688 So. 2d at 1390-91. The Court then reviewed whether the defendants were substantially prejudiced in their ability to prepare for trial and whether neglect was "plainly attributable to an attorney rather than a blameless client." *Id*. at 1389. The Court first provided that "there is no requirement that the defendant be substantially prejudiced by the absence of evidence." *Id*. at 1391. It then determined that the neglect at issue was plainly attributable to Pierce alone. *Id.* With "substantial evidence in the record to support her admitted deception," the Court found that the trial court in no way abused its discretion upon dismissal of the case. *Id.*

¶19.     Since the *Pierce* decision, this Court and the Court of Appeals has applied the above analysis to affirm a myriad of discovery-violation dismissals.    Notably, the Court in *Scoggins*, *Ashmore*, and *Ferguson* reviewed violations similar to those in this case and determined that the trial courts were justified in their decisions to dismiss. *See Scoggins v. Ellzey Beverages, Inc.*, 743 So. 2d 990 (Miss. 1999); *Ashmore v. Mississippi Auth. on Educ. Television*, 148 So. 3d 977 (Miss. 2014); and *Ferguson v. Univ. of Mississippi Med. Ctr.*, 179 So. 3d 1060 (Miss. 2015). While each of these matters concerned unique fact patterns and requests for the Court, their discovery violations embraced a common thread: each plaintiff engaged in a "pattern of false testimony that struck to the core of the material issues in the lawsuit." *Ashmore*, 148 So. 3d at 979.

¶20.    In *Scoggins*, the plaintiff affirmatively stated that, other than the accident at issue and a softball injury in 1958, she had never sustained an injury to the portions of her body which she claimed were injured as a result of the defendants' negligence.   However, through medical records later obtained by the defendants, the court learned that Scoggins "had been examined and/or treated for pain, numbness and/or arthritis in her left leg, back, hip and/or spine on thirty-five separate visits from October 5, 1976, through January 21, 1994." *Scoggins*, 743 So. 2d at 990-91.  Additionally, less than three months before the accident on March 4, 1994, Scoggins visited her physician and complained of pain in "the left shoulder" and "tenderness, back pain and stiffness in the spine." *Id.* at 992.  The trial court found–and this Court agreed–that the plaintiff's attempts to attribute such flagrant discrepancies to memory loss and recent deaths in her family were seemingly selective and not credible explanations for the material misrepresentations. *Id.* at 993.

¶21.    Similarly, in *Ashmore*, the plaintiffs failed to disclose a previous back injury, previous knee surgeries, and an injury which occurred after the subject motor-vehicle collision.   The trial court determined that such misrepresentations were willful and represented a "deliberate attempt to subvert the judicial process." *Ashmore*, 148 So. 3d at 981.  This Court agreed. Finding that the trial court was well within its discretion to dismiss the case under the circumstances, this Court ruled that dismissal was an appropriate and meaningful penalty, preventing the parties from "getting away with lying under oath." *Ashmore*, 148 So. 3d at 986-87.

¶22. Likewise, we determined in *Ferguson* that dismissal of a substituted party-plaintiff was warranted because the plaintiff had signed a false affidavit, committing perjury regarding a key issue. Ferguson claimed that he had no specific recollection of swearing out the affidavit. Instead, he argued that he remembered being asked to sign something, but he was not certain what it was. *Ferguson*, 179 So. 3d at 1064. Ferguson then testified that the contents of the affidavit were false. *Id.* The trial court dismissed the case and this Court affirmed. Finding that the judge recognized that he was required to impose the least restrictive sanction, this Court determined that dismissal was appropriate in light of Ferguson's conduct and misrepresentation in the case. *Id.* at 1066.

¶23. While the *Pierce* factors have been applied to many cases affirming a trial court's dismissal, several have also reversed the trial court's judgment, remanding for the case to move forward. One such case is the recent ruling in *Kinzie v. Belk Department Stores, L.P.*, 164 So. 3d 974 (Miss. 2015). There, this Court noted that "where the discovery violation at issue is less extreme and open to potential truthful interpretations, this Court will not hesitate to reverse a trial court's Rule 37 dismissal." *Kinzie*, 164 So. 3d at 978. Mindful of this standard, the Court determined that the plaintiff's testimony that he was no longer "able to enjoy tinkering with automobiles as the stooping, bending, and squatting are painful" did not merit dismissal. *Id.* The Court found that the defendant's video footage revealing Kenzie's daily activities of walking around town and working in his shed did not establish "any kind of pattern of misleading or false responses." *Id.* at 979. Rather, the Court found that, while "Kinzie indisputably was injured," the "activity observed by the defendant's undercover

12

video did not . . . encompass any of the specific activities that he stated he no longer could perform." *Id*. at 978-79. As a result, the Court reversed the trial court's dismissal, noting that, although Kinzie's response was misleading, "the perceived falsehood arose in an isolated incident, and it certainly has not been established that Kinzie's statements in discovery indicate any kind of pattern of misleading or false responses." Under the *Pierce* standard, Kenzie's violation did not result from willfulness or bad faith, making the deterrent value of other sanctions under Rule 37 appropriate.

¶24. Through *Pierce* and its progeny, this Court has advanced a clear and uncomplicated standard under which courts of this state may analyze sanctions for discovery violations. On appeal, we have articulated our standard of review through the cases above, encouraging trial courts to dismiss matters when parties deliberately attempt to subvert the judicial process. *Ashmore*, 148 So. 3d at 985. The Court favors dismissal as a sanction of last resort, although, when a party's failure to comply with the trial court's orders results from willfulness or bad faith, we will not hesitate to affirm. *Scoggins*, 743 So. 2d at 996. When applying the *Pierce* factors, we must "stay true and honor the appropriate standard of review," allowing the discretionary decisions of a trial judge to stand. *Ashmore*, 148 So. 3d at 985. If nothing in the trial record "suggests an 'arbitrary' or 'clearly erroneous' ruling was made by the learned trial judge, or instills in this Court a 'definite and firm conviction that the court below committed a clear error of judgment,'" we must affirm the dismissal. *Id*. at 987.

### III. Applying the Standards to the Dismissal Sanction

13

¶25. As detailed above, this Court consistently has held that a "trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances." *Pierce*, 688 So. 2d at 1388. In reviewing a the circuit court's dismissal of May's claims, we find that the plaintiff engaged in a repeated course of misleading conduct by continuously providing false answers and failing to disclose relevant information. As detailed below, when the *Pierce* factors are applied to these facts, we fail to find any error by the trial court in choosing to dismiss the matter for these extreme discovery violations.

¶26. In its order granting dismissal, the trial court thoroughly applied the *Pierce* factors and first asked whether May's discovery violations were the result of willfulness or bad faith. After analyzing various cases handed down by this Court and the Court of Appeals, the trial court found that the facts in the case *sub judice* were even more egregious that those in *Ashmore* or the recent Court of Appeals opinion, *Lockhart v. Stirling Properties, Inc.,* 170 So. 3d 1235 (Miss. Ct. App. 2015).[1] Throughout the interrogatories, requests for production, and deposition, May time and again denied that he had any injuries or medical issues related to those injuries alleged in this suit. After the defense secured medical records from May's physicians, such denials were proved false. Along with other misleading testimony,[2] the trial

---

[1] The Court of Appeals affirmed dismissal of the plaintiff's case after finding a "clear record of repeated misrepresentations and nondisclosures in . . . responses to [the defendant's] interrogatories and requests for production of documents, including the supplementation to those requests." *Lockhart*, 170 So. 3d at 1239. The court determined that "failure to disclose similar injuries, preexisting conditions, prior treatment, and medications can be grounds for dismissal," and held that the trial court did not abuse its discretion in dismissing the matter. *Lockhart*, 170 So. 3d at 1238.

[2] Several inconsistencies arose throughout the deposition. For example, through written discovery, May claimed to have only a fifth-grade education. However, in his

14

court considered this difficulty to provide the truth, particularly as it related to the medical waiver May alleged to have signed. Giving the plaintiff the benefit of the doubt, the court provided May's counsel with ample opportunity to submit the signed waiver to the court as proof of his compliance with the discovery requests. However, at the hearing on the motion for reconsideration, May's counsel explained to the court that he did not have a copy of the waiver, and that it was not his responsibility to keep up with the defendant's correspondence.

¶27. Without proof of the waiver, May's early refusal to submit a medical authorization and his apparently false affidavit attesting to his previous submission of the form amounted to willful deceit that the court found to be particularly egregious. Taking all of these facts into consideration, the trial court determined that whether the waiver was signed became a factual issue as to the credibility of the two parties. After examining the available testimony and discovery as a whole, the court determined that May's narrative was simply not reliable. We find that the trial court diligently analyzed the first *Pierce* factor and properly determined that–under the facts of the case–May's repeated false answers and failure to disclose relevant information were willful discovery violations made in bad faith.

---

deposition, May claimed to have continued on through the eleventh grade, after which he joined the military. Secondly, when asked if he had any criminal convictions, May initially stated he was arrested for fighting in a bar and spent a couple nights in jail as a result. Then, at his deposition, May testified he also had been arrested for a DUI in the 1970s, and had spent thirty months in jail after being convicted of a burglary. Also, when asked if May had been in any other car accidents, he testified through his interrogatories that he had not been in any. However, after receiving his medical records from his treating physicians, the defense discovered that May had been in an accident in 1999, after which he reported neck and spine pain. In addition to stating that he had no injuries or medical treatment prior to the collision with Austin, these serious misrepresentations of significant life events add to the egregiousness of May's discovery violations.

¶28.     Moving to the second factor, the trial court then asked whether the deterrent value of Rule 37 could be achieved by lesser sanctions.  There, the court determined that the ongoing nature of the lies and omissions regarding the medical authorization by May and his counsel warranted more than a fine or the ability to cross-examine the plaintiff.[3] Consequently, any sanction less than dismissal would fail to discourage such bad-faith litigation conduct in the future.  We agree and find that the court's "decision was not arbitrary, but was based on the law we established." *Ashmore*, 148 So. 3d at 984.  Therefore, under these circumstances, only a dismissal would serve the interest of justice.

¶29.     Next, the court considered whether the wronged party had suffered prejudice as a result of the discovery violation.  In *Pierce*, this Court held that there is no requirement that the "defendant be substantially prejudiced by the absence of evidence." *Pierce*, 688 So. 2d at 1391.  Nevertheless, the trial court squarely addressed the defendants' harm, finding that the defense had been "significantly prejudiced by the plaintiff's costly refusal to cooperate with the Mississippi Rules of Court[,] namely through the inordinate delay cause[d] by the [p]laintiff's lack of candor and legal gymnastics required for the [d]efendants simply to get basic, crucial information to ably defend the lawsuit."  While not required, the trial court thoroughly considered the prejudice sustained as a result of May's abuse of the judicial process.  We find the court adequately considered prejudice as part of its decision to dismiss and properly assessed the defendants' harm due to May's discovery violations.

---

[3] Cross-examination by the defense was a potential sanction offered by the plaintiff as recompense for the discovery violations.  However, because the plaintiff was found to have lied under oath, the defense would have the opportunity to question the plaintiff, whether by sanction or procedural provision.

16

¶30. Finally, the court reviewed whether the discovery abuse was attributable solely to trial counsel instead of "a blameless client." While the judge took issue with plaintiff's counsel's role in the "litigation subterfuge," he found May to be anything but blameless for his "continuous cavalier lack of truthfulness." Although the trial court separately found that plaintiff's counsel made binding representations to the court about the medical authorizations signed by his client, we find that May's numerous and unequivocal ongoing lies and omissions about matters central to the litigation left the court and the defendants "without knowing what they [could] believe." As a result, the trial court thoroughly reviewed the fourth *Pierce* factor and properly addressed May's measure of fault in its entry of dismissal.

¶31. Having considered the trial court's application of the *Pierce* factors, we find that the court properly analyzed May's discovery violations, applied appropriate weight to each misrepresentation, and arrived at a justifiable conclusion. As we observed in *Scoggins*, "[w]hen this Court reviews a decision that is within the trial court's discretion, it first asks if the court below applied the correct legal standard. If the trial court applied the right legal standard, then this Court will affirm a trial court's decision unless there is a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors.'" *Scoggins*, 743 So. 2d at 996 (quoting *Pierce*, 688 So. 2d at 1388). Here, the trial court's order granting dismissal labored over the relevant caselaw and the applicable standard, supporting its decision to dismiss. Although the court recognized dismissal with prejudice as a last resort, it discerned no other sanction that might properly deter May or other future plaintiffs from abusing the discovery process with such

17

blatant misrepresentations. Because the trial court's dismissal achieved the appropriate deterrent effect, preventing parties from dodging a meaningful penalty for lying under oath, we affirm the trial court's decision as a reasonable and appropriate ruling under Mississippi Rule of Civil Procedure 37. *See Ashmore*, 148 So. 3d at 985.

**CONCLUSION**

¶32. After determining that Plaintiff May committed various, egregious discovery violations, the trial court properly applied an available Rule 37 sanction and ordered this case dismissed with prejudice. We have held that "[c]ourts, trial or appellate, should not condone lies or mollify penalties for lying or discourage trial judges from protecting our courts from those who would seek to abuse the judicial process in pursuit of lucre. Every court, at every level, should be vigilant in maintaining integrity." *Ashmore*, 148 So. 3d at 985. Under its discretion, the Hinds County Circuit Court sought to maintain that integrity by employing one of the alternative sanctions provided for under the law. Honoring the appropriate standard of review, this Court will do the same and allow this trial judge's decision to stand.

¶33. The judgment of the Hinds County Circuit Court is affirmed.

¶34. **AFFIRMED.**

**RANDOLPH AND KITCHENS, P.JJ., COLEMAN, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. WALLER, C.J., NOT PARTICIPATING.**